Gary Lee MAUNEY, Plaintiff,

v.

IMPERIAL DELIVERY SERVICES, INC., Robert J. Boyle, and Newspaper and Mail Deliveries' Union of New York and Vicinity, Defendants.

IMPERIAL DELIVERY SERVICES, INC., Third–Party Plaintiff,

v.

HUFFMASTER ASSOCIATES, INC., Alternate Workforce, Inc., Academy Bus Tours, Inc., Security Enforcement Bureau, Inc., Boyd Security Systems, Inc., T & H Security, Inc., Citadel Security Agency, Pro–Tech Security Services, Inc., P.B.S. Consultants Corp., The City of New Rochelle, Timothy Idoni, Mayor of the City of New Rochelle, and Michael Armiento, Commissioner of Police of the City of New Rochelle, Third–Party Defendants.

No. 93 Civ. 3352 (GLG).

United States District Court,
S.D. New York.

Sept. 27, 1994.

Nunc Pro Tunc Order Correcting
Decision Oct. 21, 1994.

David E. Bamberger, New York City, for plaintiff.

Feder, Connick & Goldstein, P.C. (Benedene N. Cannata, of counsel), Mineola, NY, for defendant/third-party plaintiff Imperial Delivery Service, Inc.

Shapiro, Shiff, Beilly, Rosenberg & Fox (Barry Levy, of counsel), New York City, for defendant Newspaper and Mail Deliverers' Union.

John Kelligrew, White Plains, NY, for defendant Robert Boyle.

Lester, Schwab, Katz & Dwyer (Eric A. Portuguese, of counsel), New York City, for third-party defendant Security Enforcement Bureau, Inc.

Thurm & Heller (Barry Jacobs, of counsel), New York City, for third-party defendants T & H Security, Inc. and Citadel Security Agency.

Law Offices of Alan I. Lamer (Dennis E. Krolian, of counsel), Elmsford, NY, for third-party defendant P.B.S. Consultants Corp.

Donald L. Frum & Associates (Donald L. Frum, of counsel), Tarrytown, NY, for third-party defendants Huffmaster Associates and Alternate Workforce, Inc.

Wilson, Elser, Moskowitz, Edelman & Dicker (Larry H. Lum, of counsel), New York City, for third-party defendant Pro–Tech Security Services, Inc.

Gladstein & Isaac (Emily Diamond, of counsel), New York City, for third-party defendant Boyd Security Systems, Inc.

Ferrara & Hantman, New York City, for third-party defendant Academy Bus Tours, Inc.

O'Connor, McGuinness, Conte, Doyle, Oleson & Collins (Montgomery L. Effinger, of counsel), White Plains, NY, for third-party defendants City of New Rochelle, Timothy Idoni and Michael Armiento.

## OPINION

GOETTEL, District Judge:

The primary action in this case is brought by plaintiff Gary Lee Mauney to recover for injuries sustained when he was a replacement worker during a labor dispute between defendant Imperial Delivery Service, Inc. ("IDS") and defendant Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU" or the "Union"). IDS has filed a third-party complaint alleging that a number of private security agencies connected to IDS, as well as the City of New Rochelle and two of its officials, were responsible for Mauney's injuries. Most of the third party defendants now move for a summary judgment.

## FACTS

By May of 1992, IDS and NMDU were embroiled in a labor dispute. IDS had con-

tracted with third-party defendant Huffmaster Associates, Inc. ("Huffmaster") and/or third-party defendant Alternate Workforce, Inc. ("Alternate") for drivers to replace the striking NMDU workers.[1] IDS also contracted with other private security agencies for a variety of services.

On May 21, 1992 a bus apparently owned and operated by third-party defendant Academy Bus Tours, Inc. was transporting Mauney and other replacement workers to the IDS newspaper distribution facility in New Rochelle, New York. Close to IDS's facilities (the exact position of the incident is disputed), the bus encountered a number of NMDU pickets. As the bus passed the pickets, Robert Boyle, an NMDU member, threw a rock which passed through a window of the bus and struck Mauney in the head.

According to Mauney's complaint, on March 5, 1993, defendant Robert Boyle pled guilty to charges of second degree assault and possession of a deadly weapon, stemming from the rock-throwing incident.

Prior to this sad incident, both IDS and the New York Times Company (for which IDS provided delivery services) had obtained legal rulings against NMDU. On May 15, 1992, Judge Leval, then of the Southern District of New York, issued an order requiring NMDU to pay $100,000 to the Times for violating a temporary restraining order of May 7, 1992, and a contempt order of May 11, 1992. *See New York Times Company v. Newspaper and Mail Deliverers' Union of New York and Vicinity*, No. 92 Civ. 3345 (PNL), 1992 WL 110721 (S.D.N.Y. May 15, 1992). Judge Leval's order, and the previous contempt order, described violent efforts by NMDU members to prevent the distribution of the New York Times newspaper. Although most of the violence was apparently directed against equipment, Judge Leval's order described one incident in which rocks and bottles were thrown at "a Times escort car," whose driver was "almost hit by a fired ball bearing." *Id.* at 2.

IDS obtained a preliminary injunction from New York Supreme Court Justice

Alfred N. Lama on May 12, 1992. The preliminary injunction limited the number and position of picketers at IDS's New Rochelle facility, and declared that NMDU and its members were enjoined from, *inter alia,* inflicting or threatening to inflict violence on employees of IDS and associated individuals, and from carrying "clubs, rocks or any other weapon at or near the Facilities." *Imperial Delivery Service, Inc. v. Newspaper and Mail Deliverers Union of New York and Vicinity*, No. 92–07819, slip op. at 3 (N.Y.Sup.Ct. May 12, 1992).

Justice Lama's preliminary injunction also ordered law enforcement agencies to enforce the injunction. On May 15, 1992, a law firm retained by IDS sent a letter to the New Rochelle Commissioner of Police (third-party defendant Michael Armiento) requesting that the police comply with the terms of the preliminary injunction, and complaining about the police department's earlier alleged failure to comply with the injunction.

In May, 1993, Mauney filed a complaint initiating the primary action in this case. In October, 1993, IDS filed its third-party complaint, seeking contribution and/or indemnification from the third-party defendants named in the above caption. On June 17, 1994 Mauney moved for leave to amend his complaint to assert a direct cause of action against all the third-party defendants.

Currently before us are Mauney's motion for leave to amend, and motions by most of the third-party defendants opposing Mauney's motion and moving for a summary judgment on IDS's third-party complaint. The third-party defendants are also seeking to resolve cross-claims involving other third-party defendants and defendant NMDU.

At the time the instant motions were filed, the bulk of discovery had yet to occur.

### DISCUSSION

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P.

---

1. The nature of the relationship between Huffmaster and Alternate is unclear, but at a minimum they are affiliated companies.

56(c). In making this determination, we must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). Summary judgment is only warranted when no reasonable trier of fact could find for the non-moving party. *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

### 1. Private Security Agencies' Liability to Plaintiff[2]

We begin with a discussion of the private security agencies' liability to Mauney. This issue bears on Mauney's motion to amend his complaint to add the third party defendants as direct defendants, since the private security agencies argue that they have no possible liability to Mauney. This issue also bears on the private security agencies' motions for a summary judgment on IDS's claim for indemnification and/or contribution, since IDS clearly has a right to indemnity or contribution if the private security agencies may be liable to Mauney.

The private security agencies' arguments that they should be granted a summary judgment on the issue of their liability to Mauney fall into three categories: first, that they had no contractual duty to Mauney, second, that they owed Mauney no duty in tort, and third, that even if they did owe a duty, their actions or omissions cannot be considered a proximate cause of Mauney's injuries.

#### i. Scope of Contractual Duty

 IDS argues that Mauney, and the replacement workers in general, were third-party beneficiaries of the various contracts between IDS and the private security agencies. The private security agencies disagree. Issues of fact as to the specifics of the relevant contracts, most of which are oral, preclude granting a summary judgment to the private security agencies on this issue.

Huffmaster has presented an affidavit from a Huffmaster executive stating that its oral agreement with IDS simply required Huffmaster to provide "Road Response Teams" to follow trucks delivering newspapers, and document illegal activities involving these trucks. Thus, Huffmaster concludes, it had no duty with regard to buses delivering replacement workers. IDS, however, has presented an affidavit from Thomas Lally, IDS's Director of Security, stating that Huffmaster had agreed, *inter alia*, to generally protect the replacement workers.

Third-party defendant Security Enforcement Bureau, Inc. ("SEB") claims that under its oral agreement with IDS it was only to provide guards within the IDS facility, and thus it can have no liability for an injury that occurred on a public roadway. IDS counters that SEB also agreed to monitor activities outside the IDS facility and to notify the police if there appeared to be danger or a threat of danger to property or persons, including the replacement workers.

Third-party defendant T & H Security, Inc. d/b/a Citadel Security Agency ("Citadel") makes a claim similar to SEB's, which is similarly contradicted by IDS. Although Citadel did have a written contract, it is vague as to the scope of Citadel's duties.

Third-party defendant Boyd Security Systems, Inc. ("Boyd") argues that its oral agreement with IDS merely required it to escort and protect trucks going out with deliveries. IDS, however, asserts that Boyd had agreed to generally protect and monitor the exterior of the IDS premises, including the adjacent streets.

Third-party defendant Pro–Tech Security Services, Inc. ("Pro–Tech") has presented its written contract with Citadel, under which Pro–Tech agrees to provide consultation, personnel and equipment to Citadel for use in labor disputes. Pro–Tech argues that its personnel were under the control of Citadel during the events in question, and thus Pro–

**2.** Mauney has opposed the private security agencies' arguments that they are not liable to him by, *inter alia*, requesting a continuance to allow discovery to take its course. Mauney bases this request on the fact that the information concerning the contractual relations between IDS and the security agencies, and among the security agencies, is not available to him without discovery. However, the security agencies and IDS, in their opposing motion papers, have presented sufficient affidavits as to their contractual relations that the instant motions can be decided on the merits at this time.

Tech cannot be held liable for any acts or omissions of its employees. However, Pro-Tech has not presented any evidence that the personnel it supplied to Citadel were not still within the scope of their employment with Pro-Tech. Therefore, we cannot say at this point that Pro-Tech cannot be liable under the doctrine of respondeat superior.

Pro-Tech also echoes SEB and Citadel in arguing that its duties were limited to the interior of the IDS facility. This claim is, once again, contradicted by Lally, IDS's Director of Security.

In short, issues of fact regarding the scope of each private security agency's contractual responsibilities preclude granting a summary judgment to the agencies as to their contractual liability to Mauney.

### ii. Tort Duty

█ The private security agencies argue that they cannot be liable in tort, citing cases such as *Buckley v. I.B.I. Security Serv., Inc.,* 157 A.D.2d 645, 549 N.Y.S.2d 744 (2d Dep't 1990) (security guard for mall had no duty to intervene in fight among members of general public) and *Bernal v. Pinkerton's Inc.,* 52 A.D.2d 760, 382 N.Y.S.2d 769 (1st Dep't 1976) (security guard for telephone company not liable to company employee injured by intruder on company property), *aff'd,* 41 N.Y.2d 938, 394 N.Y.S.2d 638, 363 N.E.2d 362 (1977). However, these and other cases cited by the private security agencies lack certain important factual elements of the instant situation, namely the evidence from the preliminary injunctions of a clear warning that replacement workers were at risk of injury from strikers, and the evidence of the private security agencies' possible contractual duties to the replacement workers.

The New York Court of Appeals' opinion in *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.,* 557 N.Y.S.2d 286, 76 N.Y.2d 220, 556 N.E.2d 1093 (1990) is instructive:

In the ordinary case, a contractual obligation, standing alone, will impose a duty only in favor of the promisee and intended third-party beneficiaries and mere inaction, without more, establishes only a cause of action for breach of contract. But even inaction may give rise to tort liability where no duty to act would otherwise exist if, for example, performance of contractual obligations has induced detrimental reliance on continued performance and inaction would result not "merely in withholding a benefit, but positively or actively in working an injury." In such a case, the defendant has undertaken not just by his promises but by his deeds a legal duty to act with due care.

*Id.* at 289, 76 N.Y.2d at 226, 556 N.E.2d at 1096 (citations omitted).

If IDS is correct as to the nature of the contracts between IDS and the various private security agencies, and if, as can be reasonably inferred, the private security agencies were performing according to those contracts, then it can be further reasonably inferred that plaintiff may be able to satisfy the conditions listed in *Eaves Brooks* for imposing tort liability.

### iii. Proximate Causation

█ The private security agencies argue that even if they were negligent, their dereliction cannot be considered a proximate cause of Mauney's injuries. They argue that Boyle's rock-throwing was the sole proximate cause of Mauney's injuries.

Under New York law,

the act of a party sought to be charged is not to be regarded as a proximate cause unless it is in clear sequence with the result and unless it could have been reasonably anticipated that the consequences complained of would result from the alleged wrongful act; [ ] if the consequences were only made possible by the intervening act of a third party which could not have reasonably been anticipated then the sequential relationship between act and results would not be regarded as so established as to come within the rule of proximate cause.

*Saugerties Bank v. Delaware & Hudson Co.,* 236 N.Y. 425, 430, 141 N.E. 904 (1923). This holding also applies when the "act" is a failure to perform a duty. *See Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 986 (E.D.N.Y.1988), *vacated in part on other*

*grounds sub nom. In re Crazy Eddie Sec. Litig.,* 714 F.Supp. 1285 (E.D.N.Y.1989).

■ Moreover, "[t]he issue of what is a foreseeable consequence of defendant's conduct may be subject to varying inferences, so the issue of foreseeability is generally left for the jury to resolve." *Fuentes v. Consolidated Rail Corp.,* 789 F.Supp. 638, 642 (S.D.N.Y.) (citing *Bahan v. Green Bus Lines, Inc.,* 465 N.Y.S.2d 784, 785 (2d Dep't 1983)), *aff'd,* 978 F.2d 706 (1992).

■ Drawing all reasonable inferences from the available facts in favor of Mauney, we cannot say that no reasonable jury could find that alleged negligence by the security agencies was a proximate cause of Mauney's injuries. The injunctions obtained by the Times and IDS, and the findings of Judge Leval, support the view that violence by NMDU members against replacement workers was predictable. Plaintiff has pointed to evidence, in the form of an affidavit from Kevin Taylor, apparently a Pro–Tech employee, that the number of pickets just before the incident was considerably more than allowed by Justice Lama's order granting a preliminary injunction. This, plaintiff suggests, was an ominous development, considering the history of the labor strife.

Plaintiff has suggested ways in which some or all of the security agencies could have prevented his injury, such as patrolling the area of the strike, alerting the police to the potential for union violence, or insisting on police or private security force escorts before the bus was permitted to pass.

Again, issues of fact prevent a grant of summary judgment as to the argument by the private security agencies that their alleged negligence could not be a proximate cause of Mauney's injuries.

### iv. SEB's Request For a Partial Summary Judgment

In its reply memorandum, SEB argues that even if we credit IDS's argument that SEB had a duty to monitor activities outside the IDS facility which inured to Mauney's benefit, SEB cannot possibly be liable on certain of the specific claims which Mauney seeks to make against the private security agencies. Thus, SEB seeks partial summary judgment as to its liability to Mauney.

It would be inappropriate, however, at this time to make a detailed determination as to Mauney's claims against the private security agencies. First, SEB has raised this argument only in its reply papers, and, understandably, no party has submitted evidentiary material in response. Second, Mauney should have an opportunity to plead his claims and proceed with discovery before having to respond to a detailed factual attack thereon. SEB's request for partial summary judgment is denied.

### 2. *IDS's Contribution/Indemnification Claim Against the Private Security Agencies*

■ The private security agencies argue that IDS's third-party complaint seeking contribution and/or indemnification must be dismissed. They argue that IDS cannot maintain a claim for contribution against them because contribution is for joint tortfeasors, *Sommer v. Federal Signal Corp.,* 583 N.Y.S.2d 957, 964, 79 N.Y.2d 540, 555–56, 593 N.E.2d 1365, 1372 (1992), and they have no potential tort liability to Mauney. However, as discussed above, it cannot be said at this juncture that the security agencies have no potential tort liability to Mauney, so this argument fails.

■ The security agencies also argue that IDS cannot maintain a claim for indemnification against them. There is no express indemnification provision in any of the contracts between IDS and the security agencies, so IDS must ground its claim on common law implied indemnification.

■ The Court of Appeals has said of implied indemnification that "[i]t is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.'" *McDermott v. City of New York,* 428 N.Y.S.2d 643, 646, 50 N.Y.2d 211, 217, 406 N.E.2d 460, 462 (1980) (quoting Restatement, Restitution, § 76); *see also D'Ambrosio v. City of New York,* 450

N.Y.S.2d 149, 151, 55 N.Y.2d 454, 460, 435 N.E.2d 366, 368 (1982).

The private security agencies point out that the only liability that Mauney's proposed amended complaint seeks to impose on IDS is simple negligence. There does not appear to be any legal theory in this case under which IDS might be held liable to Mauney even though IDS had committed no wrong.

However, we are not inclined to grant a summary judgment to the private security agencies on the issue of indemnification at this point in time. When the instant motion papers were filed, the bulk of discovery had yet to be undertaken. The legal theories of the case may yet change.

IDS's third-party complaint is vague as to which legal theory it embraces—it seeks "contractual and/or common law indemnity and/or contribution." IDS's claim for contribution has already withstood the private security agencies' motions for a summary judgment. We will leave final determination of the exact legal theory under which IDS may eventually attempt to pass any liability it may have on to third-party defendants for a time when the factual record is more complete.

The security agencies' motions for a summary judgment on IDS's claims in its third-party complaint for contribution and/or indemnification are denied.

### 3. IDS's Motion for a Summary Judgment on Mauney's Claims

IDS somewhat half-heartedly moves for a summary judgment on Mauney's claims against it, on the ground that everyone else in the case, and not IDS, is responsible for Mauney's injuries. IDS attempts to pin the blame exclusively on Huffmaster, third-party defendant Alternate Workforce, Inc., other private security agencies, the Union, Boyle, the City of New Rochelle Police Department, and Mauney himself.

Obviously, this is an issue of fact which cannot possibly be resolved on the record currently before the court. IDS's motion for a summary judgment on Mauney's claims against it is denied.

### 4. The New Rochelle Parties' Liability to Plaintiff

Third party defendants the City of New Rochelle, Timothy Idoni, Mayor of New Rochelle, and Michael Armiento, Commissioner of Police of New Rochelle (the "New Rochelle parties") have moved for a summary judgment on the issue of their liability to Mauney, on the ground that a municipality is not liable for damages claims arising out of claims of negligence in the provision of police services.

It is true that municipalities are not generally liable for injuries resulting from failure to provide police protection. *Cuffy v. City of New York,* 513 N.Y.S.2d 372, 374, 69 N.Y.2d 255, 260, 505 N.E.2d 937, 939 (1987). This result is largely grounded in the principle that "when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action." *Haddock v. City of New York,* 554 N.Y.S.2d 439, 443, 75 N.Y.2d 478, 484, 553 N.E.2d 987, 991 (1990) (citations omitted); *accord Cuffy,* 513 N.Y.S.2d at 374, 69 N.Y.2d at 260, 505 N.E.2d at 939.

However, there is a line of cases in New York in which municipalities have been found liable in tort for failure to provide police protection. Such a finding requires that there be a "special relationship" between the municipality and the claimant. *Id.* at 375, 69 N.Y.2d at 260, 505 N.E.2d at 940. The *Cuffy* court summarized the elements of this "special relationship" as follows:

(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Id.* (citations omitted).

The evidence presented to the court in connection with these motions is sufficient to

raise an issue of fact as to each of these elements. As to the first element, Justice Lama's preliminary injunction requiring the police to enforce its provisions serves to create an issue of fact as to whether the New Rochelle police had assumed a duty to protect the replacement workers. As to the second element, the previous acts and threats of violence by Union members create an issue of fact as to whether the New Rochelle police knew that inaction could lead to harm. As to the fourth element, the fact that a court had ordered police protection creates an issue of fact as to whether Mauney and the other replacement workers relied, and relied justifiably, on such protection.

The New Rochelle Parties have focused on the third element. They argue that there is no evidence whatsoever of any direct contact between Mauney and the New Rochelle police prior to his injury.

This argument sounds plausible at first, but upon closer inspection, turns out to be hollow. The *Cuffy* court emphasized that the "direct contact" requirement is not to be applied strictly, but rather with its underlying policy consideration in mind, which is to "rationally limit[ ] the class of citizens to whom the municipality's 'special duty' extends." *Id.* at 375–76, 69 N.Y.2d at 260–63, 505 N.E.2d at 940–42. For example, in *Sorichetti v. City of New York*, 492 N.Y.S.2d 591, 65 N.Y.2d 461, 482 N.E.2d 70 (1985) an infant was allowed to recover for injuries resulting from police negligence, even though it was the infant's mother who had the direct contact with the police. The instant situation may be similar. Although Mauney did not have direct contact with the police, he was arguably part of a limited group on whose behalf IDS sought and obtained a judicial order mandating police protection.

Thus, questions of fact preclude granting a summary judgment on the issue of whether Mauney may recover for the alleged negligence of the New Rochelle parties.

The New Rochelle parties also argue that even if the police were negligent, their negligence could not rationally be considered a proximate cause of Mauney's injuries. This argument fails for the reasons given above for rejecting the private security agencies' similar arguments.

### 5. NMDU's Cross–Claim under General Business Law § 84

■ Third-party defendants SEB and Citadel argue that NMDU's cross-claim against them must be dismissed because New York General Business Law § 84 does not create a private right of action.[3]

The portion of § 84 that NMDU claims was violated by the private security agencies is as follows:

It is unlawful for the holder of a license [to operate as a watch, guard or patrol agency], issued under this article, or for any employee of such licensee, knowingly to commit any of the following acts within or without the State of New York: to incite, encourage, or aid in the incitement or encouragement of any person or persons who have become a party to any strike, to do unlawful acts against the person or property of any one, or to incite, stir up, create or aid in the inciting of discontent or dissatisfaction among the employees of any person, firm, or corporation with the intention of having them strike; to interfere or prevent lawful and peaceful picketing during strikes; to interfere with, restrain, or coerce employees in the exercise of their right to form, join or assist any labor organization of their own choosing; to interfere or hinder the lawful or peaceful collective bargaining between employees and employers. . . .

Section 84 provides for the following punitive measures: "[t]he violation of any of the provisions of this section shall constitute a misdemeanor and shall be punishable by a fine of not less than five hundred dollars, or one year's imprisonment or both." Section 85 authorizes the Attorney General to prosecute criminal actions for violation of Article 7,

---

3. A defendant such as NMDU cannot bring a "cross-claim" against a third-party defendant because cross-claims are brought between co-parties. *See* Fed.R.Civ.P. 13(g). However, since we

are granting plaintiff's motion to add the third-party defendants as direct defendants, we will consider NMDU's claim as properly pled.

which includes § 84. There is no express provision for a private right of action.

■ The test for determining when a private right of action may be implied from a statute is as follows:

[T]he essential factors to be considered are: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.

*Sheehy v. Big Flats Community Day, Inc.,* 543 N.Y.S.2d 18, 20, 73 N.Y.2d 629, 633, 541 N.E.2d 18, 20 (1989) (citations omitted). Of these factors, the third is the most important. *Brian Hoxie's Painting Co. v. Cato–Meridian Cent. Sch. Dist.,* 557 N.Y.S.2d 280, 282, 76 N.Y.2d 207, 212, 556 N.E.2d 1087, 1089 (1990).

■ The inquiry required by the first factor poses no impediment to implying a private right of action, since it is apparent that a labor union such as NMDU is one of the class for whose benefit § 84 was enacted. However, it is dubious whether recognition of a private right of action would promote the overall legislative purpose, or would be consistent with the overall legislative scheme with regards to labor relations. Courts should be very wary of allowing novel actions that interfere with the state and federal legislatures' carefully calibrated collective bargaining process. " '[T]he schemes created by statute for collective bargaining and dispute resolution must be allowed to function as intended, without the added coercive power of the courts being thrown into the balance on one side or the other.' " *Burns Jackson Miller Summit & Spitzer v. Lindner,* 464 N.Y.S.2d 712, 719, 59 N.Y.2d 314, 330, 451 N.E.2d 459, 466 (1983) (quoting *Burke & Thomas, Inc. v. International Org. of Masters, Mates & Pilots,* 92 Wash.2d 762, 600 P.2d 1282 (1979)).

For the alleged violations of § 84, NMDU is seeking damages corresponding to "all amounts of income, wages and benefits lost by its members as a result of such unlawful acts." Unquestionably, NMDU's damages claim under § 84 would significantly alter the collective bargaining balance of power. We decline to allow a private right of action under § 84. This holding applies to all the third-party defendant private security agencies, not just the two that explicitly raised the argument.

### 6. *PBS's Liability for Allowing Huffmaster to use its N.Y. License*

■ Third-party defendant P.B.S. Consultants Corp. ("PBS") argues that it is entitled to a summary judgment on the issue of its liability to Mauney, because it merely contracted with Huffmaster for Huffmaster to use PBS's New York license, and none of PBS's personnel had any personal involvement with the labor dispute between NMDU and IDS.

However, IDS has pointed to affidavits which create a question of fact as to whether PBS's personnel were actually providing security services to IDS. IDS has presented affidavits from James Bowen, Jr. and Charles Moore, which state that they are PBS employees who were providing security services to IDS on May 8, 1992, when the labor dispute was in full swing. Thus, PBS's motion for a summary judgment on all claims against it is denied.

PBS also requests a summary judgment on the issue of an indemnification provision in its contract with Huffmaster. Huffmaster has not responded to this argument. However, IDS has raised questions in its opposition to PBS's motion which cast doubt on the validity of the contract between PBS and Huffmaster.

IDS points out that nothing in the provisions of New York General Business Law Article 7 allows New York licensed watch, guard or patrol agencies to extend their licenses to out-of-state firms. Indeed, New York General Business Law § 70(2) states that no firm can act as a watch, guard or patrol agency in New York "without having first obtained from the department of state a license so to do." The plain import of this language is that a firm must obtain its license directly from the department of state.

It may be that facts concerning the usual procedures by which out-of-state security firms operate in New York will emerge from discovery. In any event, given the uncertainty over the validity of the contract between Huffmaster and PBS, we decline to grant a summary judgment to PBS on the issue of Huffmaster's contractual duty to indemnify.

### 7. Pro–Tech's Indemnification Clause in Contract with Citadel

■ Pro–Tech is moving for a summary judgment on Citadel's contractual duty to indemnify Pro–Tech. The contract between Pro–Tech and Citadel, according to which Pro–Tech agreed to provide personnel, consultation and equipment to Citadel, contains the following provision:

> 9. *INDEMNIFICATION:* [Citadel] agrees to indemnify and hold harmless PRO–TECH from any loss or liability incurred by PRO–TECH including legal fees and related out-of-pocket expenses, including, but not limited to, those resulting from actions, claims, litigations commenced by picketers, union members and/or labor unions and losses occasioned by damage to any vehicle leased, owned or operated by PRO–TECH except for damages, losses, liabilities or injuries sustained by [Citadel], its personnel, guests, or invitees, which damages, losses, liabilities or injuries were the result of intentional tortious acts committed by PRO–TECH or its personnel for which there are no valid defenses.[4]

Citadel argues that this indemnification provision only applies to claims brought by "picketers, union members and/or labor unions," and thus does not apply to an action by a replacement worker such as Mauney. Pro–Tech argues for a broader construction of the indemnification provision, emphasizing that the provision "includ[es] . . . but [is] not limited to" claims from the labor side.

■ Both of these are reasonable interpretations of the contract language. When a contract is susceptible of two plausible interpretations, summary judgment as to the meaning of the contract is inappropriate. *Record Club of America, Inc. v. United Artists Records, Inc.,* 890 F.2d 1264, 1270–71 (2d Cir.1989). Accordingly, Pro–Tech's motion for a summary judgment on Citadel's contractual duty to indemnify is denied.

### 8. Mauney's Motion for Leave to Amend

■ Finally, we arrive at the motion which provoked all of the other motions: Mauney's motion for leave to amend his complaint to add the third-party defendants as direct defendants. Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading is served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

The only reason given by the third-party defendants in opposing Mauney's motion for leave to amend is that since they cannot possibly be liable to Mauney, amendment would be futile. However, as indicated above, the third-party defendants have not shown that as a matter of law, they cannot be liable to Mauney, so this argument fails.

The New Rochelle parties have a more compelling argument for opposing plaintiff's motion for leave to amend than do the other third party defendants. They point out that under New York General Municipal Law § 50–i, no personal injury action can be maintained against a city unless an appropriate notice of claim is timely filed. They also point out that this provision applies when a plaintiff seeks to join a third-party defendant municipality as a direct defendant. *See 2999 Realty Corp. v. Hallen Constr. Corp.,* 406 N.Y.S.2d 951 (N.Y.City Civ.Ct. Bronx Cty. 1978). Plaintiff does not oppose this argument. Accordingly, plaintiff's motion for leave to amend is denied as to the New Rochelle parties.

---

**4.** Although the contract provided the court by Pro–Tech is not signed, Citadel in its opposition papers does not make an issue of this, and goes on to argue that the indemnification language does not apply to Mauney's claim. Thus, we take it as admitted by Citadel that the contract supplied by Pro–Tech is the contract that governed the relations between Citadel and Pro–Tech in this matter.

Justice requires that Mauney be given leave to amend. He should have the opportunity to test on the merits his claim that the third-party defendants (except for the New Rochelle parties) are directly liable to him.

## SUMMARY

Plaintiff Gary Lee Mauney's motion for leave to amend is granted, except as to third-party defendants the City of New Rochelle, Timothy Idoni and Michael Armiento. Defendant Imperial Delivery Service, Inc.'s motion for a summary judgment is denied.

The third-party defendant private security agencies who have filed motions for a summary judgment are: Huffmaster Associates, Inc, Security Enforcement Bureau, Inc., T & H Security, Inc. d/b/a Citadel Security Agency, Pro–Tech Security Services, Inc., P.B.S. Consultants Corp., and Boyd Security Systems, Inc. To the extent that these motions oppose NMDU's claim under New York General Business Law § 84, they are granted. (Only Security Enforcement Bureau's and T & H/Citadel's motions explicitly raise the issue, but the other motions seek a summary judgment on "all cross-claims," which we take to include NMDU's claims against the private security agencies.) In all other respects, however, they are denied.

Third-party defendants the City of New Rochelle, Timothy Idoni and Michael Armiento's motion for a summary judgment is denied.

Defendant Newspaper Mail and Deliverers Union of New York and Vicinity's application for a continuance is rendered moot by the denial of the third-parties' and IDS's motions for a summary judgment.

**SO ORDERED.**

## ORDER

On September 27, 1994, we issued a memorandum decision which, *inter alia*, granted plaintiff Gary Lee Mauney's motion for leave to amend his complaint to add certain third-party defendants as direct defendants. *See Mauney v. Imperial Delivery Services, Inc.*, No. 93 Civ. 3352 (S.D.N.Y. September 27, 1994). At one point in the opinion, as we were considering a cross-claim by defendant Newspaper and Mail Deliverers' Union (NMDU) against two third-party defendants, we inserted the following footnote:

> 3. A defendant such as NMDU cannot bring a "cross-claim" against a third-party defendant because cross-claims are brought between co-parties. *See* Fed. R.Civ.P. 13(g). However, since we are granting plaintiff's motion to add the third-party defendants as direct defendants, we will consider NMDU's claim as properly pled.

*Id.* Maj. at 150.

 We have now received a letter brief from defendant (formerly third-party defendant) Security Enforcement Bureau, Inc. (SEB), dated October 12, 1994, seeking a "clarification" of our position concerning cross-claims against co-parties. SEB points out that while our interpretation of Rule 13(g) may be linguistically correct, it creates practical problems for the parties in this case, for the following reasons. SEB points out that Alternate Workforce remains a third-party defendant in this action, and states that SEB and other defendants will seek to assert claims for contribution against Alternate Workforce. SEB and the other defendants are precluded from bringing their own third-party actions against Alternate Workforce since under Rule 14(a) a third-party action may not be brought against a third-party defendant that is already a party to the action. Thus, following footnote 3 of our *Mauney* opinion, each of the defendants would be required to start a separate action for contribution against Alternate Workforce.

SEB points us to *Earle M. Jorgenson Co. v. T.I. United States, Ltd.*, 133 F.R.D. 472 (E.D.Pa.1991), in which the court faced a similar situation. The *Jorgenson* court concluded that defendants should be able to cross-claim against already joined third-party defendants. The court declared that the practical way to define "co-party", so as to avoid the "anomalous consequences" described above, is as "any party that is not an opposing party." *Id.* at 474.

We are persuaded by the *Jorgenson* court's reasoning, and adopt that court's approach. This revision of our earlier position is

a good example of why courts should avoid dicta.

We have also received a letter from the municipal defendants (the City of New Rochelle, Timothy Idoni and Michael Armiento) dated October 17, 1994. They point out that our September 27 opinion overlooked their argument that they could not be made direct defendants at this point in the proceedings because plaintiff did not file a Notice of Claim against the City of New Rochelle. Plaintiff did not, and does not, oppose this argument.

Accordingly, the following changes should be made in the September 27, 1994 opinion. At the top of page 22, after the line ending "so this argument fails.", the following paragraph should be inserted:

[Editor's Note: Corrections incorporated for purpose of publication.]

The court orders *nunc pro tunc* that these corrections be made. Plaintiff should file an amended complaint consistent with this order.

**SO ORDERED.**