OPINION OF THE COURT
Chief Judge Wachtler.
This is an action to recover for property damage sustained by a commercial tenant when a fire sprinkler system malfunctioned and flooded the leased premises. The question presented on this appeal is whether the tenant can recover against the two companies under contract with the building’s owners to inspect the sprinkler system and to maintain an alarm system.
We agree with the Appellate Division that the complaint should be dismissed as against those two defendants. We rest *223 our decision, however, not on the distinction between misfeasance and nonfeasance relied upon by that court to determine whether a contractual duty could give rise to tort liability to a third party, but rather on a weighing of the policy considerations applicable generally to the question whether a tort duty should be so extended. Based upon these considerations, we conclude that the alleged negligence of those defendants in performing their contractual obligations did not breach any duty of care owed to plaintiff.
Plaintiff Eaves Brooks Costume Company is in the business of renting and selling costumes for the theatre industry. In 1981, Eaves Brooks leased the top four floors of a building located in Long Island City and owned by defendants Y.B.H. Realty Corp. and Photostam Companies, Inc.* The building was equipped with a fire sprinkler system covering 96,000 square feet and including approximately 1,000 sprinkler heads.
At the relevant times, defendant New York Automatic Sprinkler Service Co. was under contract with the building’s owners to inspect the sprinkler system and to report all service needs to them. The contract called for 12 inspections per year, at a yearly cost of $120. The contract price was for inspection only and did not obligate New York Automatic to provide maintenance. The contract further provided that New York Automatic "shall be under no liability except as herein expressly set forth, and, in no event shall its aggregate liability for damages, whatever the cause and whether or not due to negligence, be greater than One Hundred ($100) Dollars, unless at the time of the execution hereof, the parties agree in writing upon a greater liability in consideration of an additional sum to be paid by Subscriber”. There is no dispute that New York Automatic had in fact conducted such inspections for several years.
Similarly, defendant Wells Fargo Alarm Services was under contract with the owners to install and maintain a central station fire alarm system in the building. Pursuant to this contract, Wells Fargo installed a "paddle switch” to detect water flow in the sprinkler system and to send a signal to Wells Fargo’s offices in the event that the sprinkler system was activated. The annual charge for this service was $660. *224 The contract limited Wells Fargo’s liability as follows: "It is understood that Wells Fargo is not an insurer; that insurance shall be obtained by Subscriber, if any is desired; that the sums payable hereunder * * * are based upon the value of services offered and the scope of liability undertaken and such sums are not related to the value of property belonging to Subscriber or to others located on Subscriber’s premises * * *. It is agreed that if Wells Fargo should be found liable for any losses or damages attributable to a failure of systems or services in any respect, its liability shall be limited to a sum equal to ten percent of the annual charge hereunder, or $250.00, whichever is greater. The Subscriber may obtain a greater limitation of liability, if desired, by payment of an increased annual rate, which shall be negotiated between the Subscriber and Wells Fargo upon the request of the Subscriber in writing.”
According to plaintiff’s allegations, on or about Saturday, November 14, 1981, a sprinkler head on the fifth floor of the building malfunctioned and began discharging water at a rate of about 2,760 gallons per hour. The building was unoccupied over the weekend and the alarm system failed to operate. Thus, the flooding continued until it was discovered by plaintiff’s employees on Monday, November 16. By that time, the water had done extensive damage to plaintiff’s inventory of costumes stored in the building. According to the complaint, the damage exceeded $1 million.
An expert hired by plaintiff concluded that the probable cause of the sprinkler head malfunction was deterioration, due to age, of its fusible link, which can cause the sprinkler to activate at progressively lower temperatures. Nationally recognized standards recommend periodic sample testing of sprinklers that have been in service for 50 years and replacement of all sprinklers made before 1920. The sprinkler heads in this system were manufactured in 1915.
With respect to the alarm system, plaintiff’s expert reported that the paddle switch was improperly located and that the system apparently had not been tested as frequently as recommended.
Plaintiff commenced this damages action against New York Automatic, Wells Fargo and the building’s owners, alleging as relevant here that New York Automatic failed to detect and notify the building’s owners of the defects in the system and that Wells Fargo had improperly installed and maintained the *225 alarm system, particularly the paddle switch. After issue was joined, New York Automatic and Wells Fargo moved for summary judgment dismissing the complaint. In addition, Wells Fargo moved in the alternative for partial summary judgment limiting its liability to $250, pursuant to the limitation on liability contained in its contract with the owners. Plaintiff cross-moved to strike Wells Fargo’s affirmative defense based on the contractual limitation of liability.
Supreme Court granted defendants’ motions to the extent of dismissing plaintiff’s complaint insofar as it pleaded causes of action for breach of contract, concluding that plaintiff was an unintended, incidental beneficiary of the contracts. Otherwise, however, the court denied defendants’ motions, holding that defendants could be liable in tort for the negligent performance of contractual duties if their conduct amounted to misfeasance, but not if their conduct was nonfeasance. The court concluded that there was an issue of fact in that regard. Finally, the court granted plaintiff’s motion to strike Wells Fargo’s affirmative defense, holding that the contractual limitation could not bind a nonparty to the contract with respect to damages arising from the breach of a tort duty.
New York Automatic and Wells Fargo appealed and the Appellate Division reversed, insofar as appealed from, and dismissed the complaint in its entirety as against those defendants. The court held that the defendants’ alleged failure to properly inspect the sprinkler and alarm systems constituted nonfeasance, not misfeasance, and was therefore not actionable. In addition, the court ruled that the improper placement of the water paddle was not a proximate cause of the alarm system’s failure. We affirm, but on different reasoning.
The parties and both lower courts, relying on Melodee Lane Lingerie Co. v American Dist. Tel. Co. (18 NY2d 57), have assumed that the dispositive question in this case is whether the defendants’ conduct should be labeled misfeasance or nonfeasance. In Melodee Lane, we held that a company under contract to provide a central station fire alarm system could be liable to a tenant, not a party to the contract, for its failure to report an alarm where its conduct constituted "affirmative defective maintenance rather than mere inaction in performing its maintenance agreement.” (Id., at 65.) Following Melodee Lane, a number of lower courts have held that sprinkler maintenance and alarm companies can be liable to noncontracting parties only for misfeasance in the performance of *226 the contract and that the failure to detect flaws in a sprinkler system or the failure of the alarm system is nonfeasance (World Trade Knitting Mills v Lido Knitting Mills, 154 AD2d 99; Appliance Assocs. v Dyce-Lymen Sprinkler Co., 123 AD2d 512; Corporate Leasing v AFA Protective Sys., 101 AD2d 768).
This mode of analysis has been criticized on the ground that the line between misfeasance and nonfeasance is difficult to draw (see, Prosser and Keeton, Torts § 56, at 374 [5th ed]; 3 Harper, James & Gray, Torts § 18.6, at 729 [2d ed]). This is especially so in cases such as this involving contracts to inspect or maintain. An inspection that fails to uncover a defect could be labeled either misfeasance for negligent performance of the inspection or nonfeasance for failure to conduct some procedure that would have revealed the defect. There is no founded reason why liability should depend on such semantics.
In our view, the proper inquiry is simply whether the defendant has assumed a duty to exercise reasonable care to prevent foreseeable harm to the plaintiff. In the ordinary case, a contractual obligation, standing alone, will impose a duty only in favor of the promisee and intended third-party beneficiaries and mere inaction, without more, establishes only a cause of action for breach of contract (see, Prosser and Keeton, op. cit., § 92, at 659-660). But even inaction may give rise to tort liability where no duty to act would otherwise exist if, for example, performance of contractual obligations has induced detrimental reliance on continued performance and inaction would result not "merely in withholding a benefit, but positively or actively in working an injury” (Moch Co. v Rensselaer Water Co., 247 NY 160, 167). In such a case, the defendant has undertaken not just by his promises but by his deeds a legal duty to act with due care.
Ultimately, however, no matter how this inquiry is resolved, it remains for the courts to determine the fundamental question whether, as a matter of policy, the alleged negligence should result in liability. As we noted in Strauss v Belle Realty Co. (65 NY2d 399, 402-403), it is "the responsibility of courts, in fixing the orbit of duty, 'to limit the legal consequences of wrongs to a controllable degree’ * * * The courts’ definition of an orbit of duty based on public policy may at times result in the exclusion of some who might otherwise have recovered for losses or injuries if traditional tort princi *227 pies had been applied.” (Quoting Tobin v Grossman, 24 NY2d 609, 619 [other citations omitted].)
We conclude that liability should not be imposed upon New York Automatic and Wells Fargo in these circumstances. Significantly, nothing in our decision precludes plaintiff from seeking damages from the building’s owners, and the owners and plaintiff are both in a position to insure against losses such as those sustained here. The plaintiff and the owners know or are in a position to know the value of the goods stored and can negotiate the cost of the lease and limitations on liability accordingly.
If, on the other hand, New York Automatic and Wells Fargo were answerable for property damage sustained by one not in contractual privity with them, they would be forced to insure against a risk the amount of which they may not know and cannot control, and as to which contractual limitations of liability may be ineffective. The result would be higher insurance premiums passed along through higher rates to all those who require sprinkler system and alarm services. In effect, the cost of protection for those whose potential loss is the greatest would be subsidized by those with the least to lose. In this setting, we see no reason to distribute the risk of loss in such a manner.
Furthermore, the prices paid for defendants’ services, according to specific language in the contracts, were calculated on the understanding that the risk of loss remained with the building’s owners. While plaintiff is not bound by the provisions of a contract to which it is not a party, the limited scope of defendants’ undertaking is nonetheless relevant in determining whether a tort duty to others should arise from their performance of the contractual obligations. Moreover, it suggests the need to contain liability within the limits envisioned in the contract in order to keep these services available at an affordable rate.
For these reasons we conclude that New York Automatic and Wells Fargo had no cognizable duty owing to plaintiff. Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

 These two defendants apparently defaulted and are not parties to this appeal. We will refer to them individually and collectively as the building’s owners.