OPINION OF THE COURT
Edward H. Lehner, J.
The issue presented on this motion by defendant for sum *74 mary judgment is whether defendant, which had contracted with the owner of the subject building to inspect the elevators therein, owed any legal duty to the users thereof to properly perform the inspections.
FACTS
The New York Telephone Company (NYNEX) owned the building at 375 Pearl Street in Manhattan and had contracted with defendant for it to inspect the elevators and recommend any necessary repairs. Plaintiff, an employee of NYNEX, asserts that she was injured as a result of falling when the elevator in which she was riding misleveled. She avers that after her fall she noticed the elevator car was about 12 to 18 inches above the floor and that the elevators in the building had not been leveling properly for at least two months prior to the accident. It is alleged that defendant’s elevator inspection 17 days before the accident was negligently performed in that defects which caused plaintiff’s injuries were not uncovered and reported to NYNEX.
Defendant asserts that it owed no legal duty to plaintiff that can result in any liability herein, but that in any event, the injuries to plaintiff were solely the result of her own negligence in exiting the elevator, and that the alleged improper inspection cannot be said to be a proximate cause of the accident.
DISCUSSION
To establish a claim in negligence it must first be determined that there was a legal duty owed by the alleged tortfeasor to the injured party (Pulka v Edelman, 40 NY2d 781, 782 [1976]; Eiseman v State of New York, 70 NY2d 175, 187 [1987]). "Duty is essentially a legal term by which we express our conclusion that there can be liability * * * It tells us whether the risk to which one person exposes another is within the protection of the law. In fixing the bounds of that duty, not only logic and science, but policy play an important role” (De Angelis v Lutheran Med. Ctr., 58 NY2d 1053, 1055 [1983]). "The common law of torts is, at its foundation, a means of apportioning risks and allocating the burden of loss. While moral and logical judgments are significant components of the analysis, we are also bound to consider the larger social consequences of our decisions and to tailor our notion of duty so that 'the legal consequences of wrongs [are limited] to a *75 controllable degree’ ” (Waters v New York City Hous. Auth., 69 NY2d 225, 229 [1987]).
Employing these principles, it has been determined that an "elevator company which agrees to maintain an elevator in safe operating condition may be liable to a passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found” (Rogers v Dorchester Assocs., 32 NY2d 553, 559 [1973]; see also, Sirigiano v Otis El. Co., 118 AD2d 920 [3d Dept 1986]; Burgess v Otis El. Co., 114 AD2d 784 [1st Dept 1985]). In Palka v Servicemaster Mgt. Servs. Corp. (83 NY2d 579), where defendant undertook to perform maintenance for the hospital in which plaintiff was employed, it was held that a duty was owed by defendant to plaintiff with the consequence that defendant was liable, pursuant to a jury verdict, for injuries sustained by plaintiff when a wall fan fell and struck her on the head and the Court concluded (at 589): "We hold that when a party contracts to inspect and repair and possesses the exclusive management and control of real or personal property which results in negligent infliction of injury, its assumed duty extends to noncontracting individuals reasonably within the zone and contemplation of the intended safety services”.
Here, however, defendant had not contracted to service or maintain the subject elevators, but rather undertook only to inspect and report any needed repairs to NYNEX. Under local law (Administrative Code of City of NY § 27-1000), elevators are required to be inspected annually and a report of each inspection is to be filed with the City Department of Buildings.
In Wroblewski v Otis El. Co. (9 AD2d 294 [3d Dept 1959]), the defendant had a contract with New York Telephone Company which provided for the inspection of the elevators in the Telephone Company’s building as well as for "cleaning, oiling and greasing, and making necessary minor adjustments” (at 295). In reversing a dismissal of plaintiffs claim, the Third Department ruled that if defendant had failed to perform an inspection, it could be held liable only to the Telephone Company for breach of contract, but that "if inspection was undertaken, in dealing with an instrumentality potentially dangerous then Otis was obliged to perform such inspection in a reasonably careful and prudent manner, and its failure to do so would inure to the benefit of a third party using the elevator” (at 297). However, in that case, as indi *76 coted above, the defendant had also assumed contractual obligations to service the elevators and make certain repairs.
In Eaves Brooks Costume Co. v Y.B.H. Realty Corp. (76 NY2d 220 [1990]), our Court of Appeals dealt with the question of whether a company that contracted solely to make inspections of a building’s sprinkler system could be held liable for property damage sustained by a tenant due to a malfunction of the system resulting from a defect of which defendant had not notified the building owners. The Court, in finding no duty owed to the tenant, stated that liability should not depend on whether the failure to uncover a defect is labeled misfeasance (for negligent performance) or nonfeasance (for failure to conduct some procedure that would have revealed the defect), holding that (at 226): "In our view, the proper inquiry is simply whether the defendant has assumed a duty to exercise reasonable care to prevent foreseeable harm to the plaintiff”. The Court specifically indicated that significant to its policy determination that no duty was owed by defendant to the plaintiff was the fact that the tenant could seek damages from the building owners and that the tenant and the owners could insure against such losses and were "in a position to know the value of the goods stored and can negotiate the cost of the lease and limitations on liability accordingly”, whereas imposing liability on the inspection company for property damage sustained by a tenant not in privity with it would result in it being "forced to insure against a risk the amount of which they may not know and cannot control, and as to which contractual limitations of liability may be ineffective” (at 227).
However, it cannot be said that the same policy considerations apply to a claim for personal injuries by an elevator passenger. Although the same cost arguments against imposing uncontrollable liability could be said to be applicable to an elevator inspection company, in the case at hand where the inspections are being made for the safety of the users of the elevators, different policy considerations come into play. (See, Palka v Servicemaster Mgt. Servs. Corp., supra.)
The aforesaid Administrative Code provision (§ 27-1000) limits entities that may make the required annual inspections to those "acceptable to the commissioner”, with the clear purpose of the statute being to see that elevators are properly maintained for the safety of the users thereof. At his deposition, the witness produced by defendant acknowledged that the purpose of the inspections is to "make recommendations *77 [to NYNEX] for the safety of the public”. Thus, I conclude that the answer to the inquiry required by Eaves Brooks (supra) is that by undertaking the required annual elevator inspections, defendant assumed a duty to passengers to exercise reasonable care to determine whether the elevators (which are potentially dangerous to users) required any repairs or maintenance to avoid injury to the public, with any failure to exercise such care subjecting the inspection company to potential liability in negligence.
The determination in Cassell v Babcock & Wilcox Co. (186 AD2d 1000 [4th Dept 1992]) is supportive of this conclusion. There, where a boiler exploded injuring plaintiff, it was held that if the inspection of the boiler was to satisfy the inspection requirement of Labor Law § 204, then the inspection company "assumed a duty to exercise reasonable care to prevent foreseeable harm to the decedent” (at 1001).
This position is also in accord with that taken by the Restatement (Second) of Torts, where in section 324A it is provided:
"Liability to Third Person for Negligent Performance of Undertaking
"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
"(a) his failure to exercise reasonable care increases the risk of such harm, or
"(b) he has undertaken to perform a duty owed by the other to the third person, or
"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.”
In comment e, illustration 4 under this section the following example is given: “A Company employs B Company to inspect the elevator in its office building. B Company sends a workman, who makes a negligent inspection and reports that the elevator is in good condition. Due to defects in the elevator, which a proper inspection would have disclosed, the elevator falls and injures C, a workman employed by A Company. B Company is subject to liability to C.”
Thus, in light of my finding that defendant owed the public *78 a duty to exercise reasonable care in performing its inspections, and because there are clearly triable questions of fact raised with respect to other issues raised by movant relating to negligence on the part of plaintiff and proximate cause, defendant’s motion for summary judgment is denied.