■ ABRAHAM GENEN et al., Respondents, v METRO-NORTH COMMUTER RAILROAD, Respondent, and HUNTER EXCAVATING CORP., Appellant. METRO-NORTH COMMUTER RAILROAD, Third-Party Plaintiff-Respondent, v HUNTER EXCAVATING CORP., Third-Party Defendant-Appellant. [690 NYS2d 213] —Order, Supreme Court, New York County (Emily Goodman, J.), entered March 31, 1998, which, in an action to recover for personal injuries, to the extent appealed from, denied defendant Hunter Excavating Corp.'s motion for summary judgment seeking dismissal of the complaint and third-party complaint, affirmed, without costs.

Plaintiff Abraham Genen slipped and fell on an icy platform at defendant Metro-North's Salisbury Mills station. Metro-North had previously hired defendant Hunter to perform snow removal and sanding services at the station. On January 31, 1996, the day before the accident, two inches of snow fell and, according to Hunter, it plowed and sanded the platforms and station area pursuant to its contract. Plaintiff commenced the instant action for personal injuries against Metro-North and Hunter, and Metro-North brought a third-party action against Hunter for contribution and indemnification.

The issue to be decided on this appeal is whether the plaintiff may maintain a cause of action sounding only in negligence directly against the snow removal contractor Hunter. Clearly, Hunter assumed no independent duty of care to the plaintiff *solely by virtue of its snow removal contract with Metro-North*;

that is, plaintiff is not a third-party beneficiary of the snow removal contract between Hunter and Metro-North. However, Hunter may be liable to the plaintiff for its affirmative acts of negligence if those acts created or increased a hazard and were the proximate cause of plaintiff's injuries (*see, Jimenez v Cummings*, 226 AD2d 112; *Camacho v Ezras Yisrael, Inc.*, 221 AD2d 275; Restatement [Second] of Torts § 324 A [a]; *see also, Seifert v Arlona Co.*, 205 AD2d 679, 680).

In opposition to Hunter's motion for summary judgment, plaintiff presented evidence demonstrating that Hunter had performed snow removal operations on the day before the accident, in the area where plaintiff slipped. Plaintiff offered evidence showing that at the time of the accident, the area where he slipped had not been sanded and was covered with dangerous ice patches. This evidence supported plaintiff's claim in his bill of particulars that Hunter had "created the dangerous condition by incomplete ice removal." Having undertaken to clear the snow and ice, Hunter was obligated to exercise reasonable care in doing so, or be held liable in negligence where its acts created or increased the snow-related hazard (*Glick v City of New York*, 139 AD2d 402, 403). As it may reasonably be inferred that the dangerous ice patches were the residue of Hunter's incomplete and incompetent snow removal efforts, a triable issue of fact exists as to whether Hunter's conduct created or increased a hazard that would not have existed but for Hunter's actions (*supra*).

While several cases from other departments, and one from this Court, appear to hold that there is no duty to a plaintiff under similar circumstances (*see, e.g., Girardi v Bank of N. Y. Co.*, 249 AD2d 443, 444; *Coyle v Long Is. Sav. Bank*, 248 AD2d 350; *Saraceno v First Natl. Supermarkets*, 246 AD2d 638; *Keshavarz v Murphy*, 242 AD2d 680; *Phillips v Young Men's Christian Assn.*, 215 AD2d 825; *Bourk v National Cleaning*, 174 AD2d 827, *lv denied* 78 NY2d 858; *Rebell v Emigrant Sav. Bank*, 257 AD2d 491), they are not controlling. None of them discuss the pleadings or whether the plaintiffs asserted a cause of action in negligence against the contractor based on the theory that the contractor created or increased a dangerous hazard. Further, most of them do not disclose whether the contractor had attempted snow removal operations, or if they did, the result thereof. The analysis in these cases is simply too cursory to determine if those courts reached more than whether the defendant contractors had assumed a duty of care to the injured plaintiffs by virtue of the snow removal contracts with the property owners.

Nor are the Court of Appeals' holdings in *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.* (76 NY2d 220) and *Palka v Servicemaster Mgt. Servs. Corp.* (83 NY2d 579) controlling. In *Eaves Brooks* (*supra*), the Court of Appeals declined to extend tort liability to alarm and sprinkler maintenance companies for flood damage to a tenant's property, where the companies had failed to perform their maintenance or inspection duties pursuant to their contracts with the building owner. The Court explained that the failure to perform a contractual obligation will generally not give rise to tort liability vis-à-vis noncontracting third parties unless "performance of a contractual obligation has induced a detrimental reliance on continued performance and inaction would result * * * 'positively or actively in working an injury'" (*Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, *supra*, at 226, quoting *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 167). In *Palka* (*supra*), the Court reaffirmed this limitation on tort liability arising out of the failure to perform a contract. However, it carved out an important exception where the allegedly negligent party assumed "comprehensive and exclusive" maintenance duties, which fully displaced the landowner's duty to safely maintain the property (*supra*, at 588).

Significantly, in *Eaves Brooks* (*supra*, at 225-226), the Court of Appeals discussed tort liability in favor of a noncontracting party in the context of a contract to inspect or maintain, and where the contractors had simply failed to perform their duties under the contract. The holding in *Eaves Brooks*, it appears, is limited only to instances where the injury arose from "inaction" (*supra*, at 226). When a contractor is alleged to have negligently created or increased a dangerous condition by its own affirmative acts, such conduct unquestionably constitutes misfeasance rather than nonfeasance, and the scope of the defendant's duty should be determined under traditional negligence principles, without regard to any breach of contract theory.[1] Thus, it does not appear that the *Eaves Brooks* rationale applies to cases involving affirmative acts of negligence, such as in this instance. No other cases have squarely addressed this issue.[2]

The negligent conduct at issue in this case is completely dif-

---

1. Although the *Eaves Brooks* Court stated that the distinction between misfeasance and nonfeasance was not dispositive of the existence of a tort duty in that case, such statement was clearly made in reference to a contract to inspect or maintain, where the distinction is often difficult to discern. Hunter's conduct in this case presents no such difficulty.

2. The Court of Appeals has also stated that the limitation on liability discussed in *Eaves Brooks* was grounded in cases involving property damage, and this limitation "does not automatically carry over to personal injury

ferent. A failure to perform a contract is not at issue here. Rather, the claim against Hunter arises out of its affirmative acts in improperly plowing and sanding a railroad platform and leaving dangerous icy patches on its surface. Thus, Hunter's duty to exercise reasonable care in relation to the plaintiff in this context arose not out of a contract, but rather by its own affirmative acts that created a risk of injury to members of the public using that Metro-North station (*see*, Restatement [Second] of Torts § 324 A [a]; *Fish v Waverly Elec. Light & Power Co.*, 189 NY 336 [lighting company liable for injuries due to negligently secured light in plaintiff's employer's store despite absence of privity]; *Wroblewski v Otis El. Co.*, 9 AD2d 294, 296 [while elevator company's failure to inspect would merely be breach of contract, company may be liable to third parties if inspection was undertaken and performed negligently]). As an aside, it should also be remembered that the area where this accident occurred, a railroad platform, is one where a heightened duty of care exists, as the potential for grave injury resulting from improper snow removal is increased (*cf., Moch Co. v Rensselaer Water Co., supra*, at 168 [a tort duty arises where "the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm"]).

Although the dissent concedes that a snow removal contractor could be held liable for more *obvious* acts of negligence, such as striking a pedestrian with a snow plow or leaving behind a piece of equipment in a dangerous manner, we do not perceive any legal distinction between creating or increasing a dangerous condition by such acts, and doing so by affirmatively negligent snow removal. The mere existence of a contract between the owner and the snow removal contractor should not immunize the contractor from any negligence liability premised on its own affirmative negligent acts (Restatement [Second] of Torts § 324 A, comment *c* [if an actor's negligent performance of an undertaking increases the risk of harm to third persons, the fact that he is acting under a contract with another will not prevent his liability to a third person]). Clearly, if Hunter's snow plow had gouged a large slab of concrete from the edge of the platform, resulting in a passenger's fall onto the tracks, Hunter could not escape liability merely because of its contract with Metro-North.

Courts have frequently recognized that an actor's conduct may give rise tort liability where none otherwise would exist.

---

claims" where various other factors come into play (*Palka v Servicemaster Mgt. Servs. Corp., supra*, at 587).

For example, while ordinarily an owner or lessee of property is under no duty to remove snow and ice that naturally accumulates on a public sidewalk adjacent to its premises, if it undertakes to do so, it can be held liable in negligence where its acts create or increase a hazardous condition (*see, Jiuz v City of New York*, 244 AD2d 298; *Keane v City of New York*, 208 AD2d 457). A similar scenario is presented here. Initially, Hunter assumed no duty of care to plaintiff merely by virtue of its snow removal contract. Had Hunter done nothing, a mere breach of contract would exist and plaintiff would have no direct claim against Hunter. However, once Hunter attempted snow removal operations, it was obligated to do so in a proper manner that did not create a hazard that otherwise would not have existed (*Glick v City of New York, supra*). Why should Hunter be able to escape liability for its own affirmative negligent acts which allegedly injured others by skating away, using as a cover, the icy slope of a contract with another?

The causal connection between Hunter's snow removal and the hazardous icy condition is far from speculation, as the dissent implies. The facts show that after a two-inch snowfall, followed by Hunter's attempt at snow removal and sanding, the area was covered with dangerous ice patches. While the dissent suggests that this icy hazard may have been created some time after Hunter's negligent plowing and sanding, this speculative claim finds no support in the record. On its motion for summary judgment, it was Hunter's burden to eliminate all issues of material fact, including whether its conduct had created or increased a dangerous condition, and Hunter has failed to do so.

As a triable issue of fact exists, Hunter's motion for summary judgment dismissing the complaint was properly denied. Hunter's motion for dismissal of the third-party complaint was also properly denied, as its liability for contribution or indemnification must await a determination of Metro-North's liability (*see, Coyle v Long Is. Sav. Bank, supra*). Concur—Rosenberger, J. P., Nardelli and Mazzarelli, JJ.

Andrias and Saxe, JJ., dissent in a memorandum by Andrias, J., as follows: We differ with the majority solely on the issue of whether defendant-appellant, Hunter Excavating Corp., can be held directly liable for plaintiff's personal injuries based upon its alleged negligent performance of its snow removal contract with Metro-North.

Hunter was responsible for snow removal and sanding at the station pursuant to a written agreement with Metro-North. Such contract required Hunter to commence snow removal or

sanding work as soon as possible, but in any event within one hour, after being notified by Metro-North's Chief Engineer or his designee.

If so notified, Hunter was to remove any accumulation of snow, freezing rain, sleet, etc. Platforms, walkways, steps, access roads and parking lots were to be cleared to surface and coated with a sand/calcium chloride mixture to avoid slippery conditions. Hunter's president, Donald H. Hunter, testified at his examination before trial, that, despite the provisions of the contract regarding notice from Metro-North, he did not wait for Metro-North to call him to perform his services and if it snowed or rained and then froze, he would go and plow the train station.

It is uncontested that, on January 31, 1996, the day before the accident, approximately two inches of snow had fallen. Mr. Hunter testified that his records indicated that, sometime after it stopped snowing on the afternoon of the 31st, he and his helpers had plowed and sanded the platform and the parking lot and roadway. That meant that they scraped the snow off down to the blacktop and sanded with calcium chloride. A snowblower was used to remove snow from the platform. Nothing in the record refutes that testimony or gives us any reason to question it and any inference that Hunter's snow removal activities on the previous day created the specific sheet of ice upon which plaintiff slipped and fell more than 24 hours later or made the condition of the platform worse would, on this record, be pure speculation.

In its decision denying Hunter's motion and Metro-North's cross-motion for summary judgment dismissing the complaint, the IAS Court found that defendants had not met their burden of demonstrating that there is no issue of material fact as to whether they could not reasonably have been expected to notice and remedy the icy condition that allegedly developed, for whatever reason, by the morning of the accident or that Hunter was negligent in its snow removal efforts on the day preceding the accident.

On appeal, Hunter contends that it owed no duty to plaintiff and that there is no proof in the record that it had actual or constructive notice of the icy condition at the train station on the day of the accident. Plaintiffs counter that, contrary to Hunter's contentions, it is unnecessary for them to establish either an independent duty to the plaintiffs in this case or notice of the hazard for liability to be imposed by a jury, inasmuch as it is well established in New York, in cases involving the removal of snow and ice, that a landowner or responsible third-

party snow removal service may incur liability to an injured plaintiff if the snow and ice removal was performed in an improper or negligent manner. In this connection, plaintiffs, relying upon decisions of this Court in *Jimenez v Cummings* (226 AD2d 112) and *Glick v City of New York* (139 AD2d 402), contend that independent contractors, as well as those who would otherwise owe no duty to the public at large are, nevertheless, responsible for their own affirmative acts of negligence.

However, plaintiffs' reliance upon those cases, as well as seven other cited cases decided by this and other departments, is misplaced since all but one involved a plaintiff's claim directly against a landowner or a landowner's claim against a third party. For example, in *Jimenez v Cummings (supra)*, where a pedestrian slipped and fell on a patch of ice covered with light snow while walking her dog in front of defendants' premises, suit was brought against the owners of the abutting premises, whose superintendent had attempted to clear the sidewalk. Likewise, in *Glick v City of New York (supra)*, a pedestrian slipped and fell on an icy patch of sidewalk in front of a florist shop and the shop's employees had undertaken to clear the sidewalk of snow. The only case cited by plaintiffs which involved a complaint by a pedestrian directly against a snow removal contractor is a Second Department case, *Levensen v Berkey Professional Processing* (122 AD2d 867), which was decided on Workers' Compensation and procedural grounds not applicable here.

On the record before us, it is clear that Hunter did not, by virtue of its contract with Metro-North, assume " 'a duty to exercise reasonable care to prevent foreseeable harm to the plaintiff' " (*Phillips v Young Men's Christian Assn.*, 215 AD2d 825, 826, quoting *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226). Hunter's snow removal contract was not "the type of comprehensive and exclusive property maintenance obligation contemplated by the Court of Appeals in *Palka v Servicemaster Mgt. Servs. Corp.* (83 NY2d 579) which the parties could reasonably expect to displace [Metro-North's] duty as a landowner to maintain the property safely" (*Phillips v Young Men's Christian Assn., supra,* at 826).

Furthermore, as in *Phillips v Young Men's Christian Assn. (supra,* at 826), "plaintiff has failed to adduce evidence of his detrimental reliance on [Hunter's] continued performance of its snow removal obligation [citations omitted] 'or that defendant's actions had otherwise "advanced to such a point as to have launched a force or instrument of harm" ' (*Bourk v National Cleaning* [174 AD2d 827, *lv denied* 78 NY2d 858], at 828, quot-

ing *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168) result-ing in an independent duty to protect plaintiff (*see, Downes v Equitable Life Assur. Socy.* [209 AD2d 769], at 770)."

As to the question of notice to Hunter of the icy condition, unlike *Seifert v Arlona Co.* (205 AD2d 679), one of the cases cited by plaintiffs, where the Second Department found that the contract did not specify when the snow removal contractor was required to plow and sand and it was impossible to determine the parties' contractual intention from the record, Hunter's agreement with Metro-North specifies that it was to perform its services upon notification from Metro-North's rep-resentative. That Hunter may have automatically responded if it snowed or rained and froze, does not, absent any evidence of notice from Metro-North, impose an additional duty upon Hunter to inspect or sand Metro-North's premises in the event an icy condition arose after Hunter had plowed and sanded the station. Plaintiff and the majority would have us rewrite Hunter's contract with Metro-North by imposing a duty to con-tinually monitor or follow up on the changing conditions at the train station.

Finally, the majority agrees that plaintiffs' attempt to as-sume the role of third-party beneficiaries of Metro-North's contract with Hunter is without merit and is based upon their selective quotation from a clause in the contract which imposed responsibility upon Hunter for any damage to private vehicles, Metro-North property, etc., caused by its snow and ice removal activities. This is not the type of case where a plaintiff is struck by a contractor's snowplow or trips over a shovel negligently left lying on the ground. Plaintiffs' remedy was to sue, as they did, Metro-North as the responsible landowner and then, in the event that Metro-North was found liable in that it had actual or constructive notice of the icy condition which caused plaintiffs' accident, Metro-North could seek, as it has, contrac-tual indemnification from Hunter in its third-party action.

As to such third-party action, we have considered Hunter's and Metro-North's points requesting the grant of summary judgment dismissing it against Hunter as well as plaintiffs' ac-tion against Metro-North and find them without merit since questions of fact exist as to actual or constructive notice to Metro-North and Hunter's contractual obligation to indemnify Metro-North in the event the railroad is found liable to plaintiffs for damages.