**OMNIPOINT COMMUNICATIONS INC., Plaintiff,**

v.

**Richard COMI; Comi Telecommunications; Lawrence Monroe aka Rusty Monroe; and Monroe Telcom Associates, LLC, Defendants.**

**No. 1:99–CV–1952 (RFT).**

United States District Court,
N.D. New York.

Nov. 20, 2002.

---

Hodgson Russ LLP, Buffalo, NY (Daniel A. Spitzer, of counsel), for Plaintiff.

Girvin & Ferlazzo, P.C., Albany, NY (Christopher P. Langlois, of counsel), for Defendants.

## MEMORANDUM–DECISION AND ORDER

TREECE, United States Magistrate Judge.

Plaintiff Omnipoint Communications, Inc., ("Omnipoint"), brings this action pursuant to the Telecommunications Act of 1996 ("the Act"), 47 U.S.C. § 253(a) and 42 U.S.C. § 1983. Omnipoint moves for partial summary judgment on the issue of liability pursuant to Fed.R.Civ.P. 56(a).[1] Docket Nos. 22–26. Defendants Richard Comi, Comi Telecommunications Services, Lawrence (Rusty) Monroe and Monroe Telcom Associates (referred to either separately as "Comi" or "Monroe" or collectively as "Defendants"), oppose Omnipoint's motion (Docket Nos. 32–33, 35) and have cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56(b) (Docket Nos. 27–32). The parties have consented to have the assigned U.S. Magistrate Judge conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c) and N.D.N.Y.L.R. 72.2. Docket No. 15. For the reasons that follow, Omnipoint's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted.

### I. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, an-

---

1. Counsel for Omnipoint is reminded of N.D.N.Y.L.R. 7.1(a)(1), which states in pertinent part, "[n]o party shall file or serve a memorandum of law that exceeds twenty-five (25) pages in length, unless leave . . . is obtained *prior to filing*." (emphasis in original).

swers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. Fed.R.Civ.P. 56(e); *see also Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998).

## II. Background

A review of the parties' papers demonstrates that there are no genuine issues of material fact. Thus, the facts discussed herein are mostly extrapolated from the parties' N.D.N.Y.L.R. 7.1 Statements of Material Facts ("7.1 Statement"), unless otherwise noted. Docket Nos. 23, 28 & 33. It must be noted, however, that Omnipoint has not submitted a response to Defendants' 7.1 Statement in support of their motion for summary judgment. Thus, for any facts set forth in Defendants' 7.1 Statement in support of their motion for summary judgment that were not addressed in Omnipoint's 7.1 Statement, such facts are deemed admitted. *See* N.D.N.Y.L.R. 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."* (emphasis in original)).

In March 1998, Comi was retained by the Town of Barker ("Town") to provide consultation on various telecommunications issues. Def. 7.1 Statement (Docket No. 28), ¶ 8. Comi, in conjunction with Monroe, were hired by the Town to prepare a telecommunications tower ordinance, to review and analyze any applications for cellular towers and related facilities and to advise the Town with respect to a proposal by Omnipoint to lease Town property for the construction of a cellular tower. *Id.* at ¶ 9. In March 1998, at the Town's request, Defendant provided a proposed local law, establishing a four month moratorium on the issuance of Town permits for the construction of telecommunications towers and related facilities. *Id.* at ¶ 12. On March 23, 1998, the Town enacted the Telecommunications Towers Moratorium ("moratorium"), without first obtaining review by the Broome County Planning Board ("Planning Board"). *Id.* at ¶ 14; Pl. 7.1 Statement (Docket No. 23), ¶ 5. On July 13, 1998, the Town extended the moratorium until August 3, 1998, without first obtaining review of the extension by the Planning Board. Pl. 7.1 Statement, ¶¶ 6 & 7.

On or about March 19, 1998, Omnipoint presented to the Town a proposal for the lease of property located at Hyde Street and owned by the Town. Def. 7.1 Statement, ¶ 10. In exchange for lease payments, Omnipoint proposed to construct a 175 foot tower antenna and related wireless equipment on the property. *Id.* at ¶ 11. In April and May of 1998, Comi began to negotiate on behalf of the Town with Omnipoint, concerning the proposed lease. *Id.* at ¶ 15. The Town, at all times, approved the negotiations conducted by Comi. *Id.* at ¶ 16. Further, the Town's attorney was present at all meetings. *Id.* Negotiations continued into June 1998, but the parties were unable to reach an agreement. *Id.* at ¶ 20. Therefore, on June 22, 1998, Omnipoint formally withdrew its proposal to lease Town property. *Id.*

On August 3, 1998, the Town enacted Local Law No. 1 of 1998, titled the Telecommunications Tower siting and Special Use Permit Law ("Local Law No. 1"). *Id.* at ¶ 21. The language of Local Law No. 1 was based on a draft ordinance provided by Comi under the consulting services contract. *Id.* at ¶ 22. Local Law No. 1 imposed, *inter alia,* special use permit requirements and application fees on telecommunications providers. *See* Spitzer Decl. (Docket No. 24), Ex. A. Local Law No. 1 also required telecommunication services to first be constructed on publicly owned land before construction could be started on privately owned land. *See id.*

On August 25, 1998, Omnipoint submitted an application to the Town for construction of a telecommunications tower and related facilities on property to be leased from Russell Jackson. Def. 7.1 Statement, ¶ 26. Pursuant to Local Law No. 1, Omnipoint paid a $6,000 application fee and a total of $14,858.69 in application review fees to the Town. Kulik Decl. (Docket No. 25), ¶¶ 17 & 19. Apparently, these fees were used to compensate Defendants for their services under the consulting services contract. *Id.* at ¶ 19. Comi reviewed the application and provided the Town with its opinions and advice under the contract. Def. 7.1 Statement, ¶ 27; Pl. 7.1 Statement, ¶ 22. At the Town's direction, Defendants communicated various deficiencies in the application to Omnipoint as well as the additional materials submitted by the company through January 1999. Def. 7.1 Statement, ¶ 28. On March 8, 1999, the Town Board held a public hearing on Omnipoint's application, which was ultimately approved by the Town. *Id.* at ¶¶ 30 & 31. Omnipoint was issued construction permits on June 15, 1999, and the tower became operational on June 30, 1999. *Id.* at ¶¶ 31 & 32.

On November 15, 1999, the Town adopted Local Law No. 2 of 1999 (Local Law No. 2), which by its terms rescinded Local Law No. 1. *Id.* at ¶ 35. Omnipoint commenced this action on November 12, 1999. Docket No. 1. Aside from these Defendants, the complaint also named the Town, the Town Board, Lois Dilworth, Paul L. Smith, Albert Chasse, Gary Blackman and Terry Dean, all of whom constituted the Town Board ("Town Defendants"). By approval of the Court on January 7, 2002, a settlement was reached between Omnipoint and the Town Defendants. Docket No. 17. By the settlement terms, the Town declared that Local Law No. 1 was illegal. *Id.*

### III. Procedural Issues

#### A. Statute of Limitations

■ As an initial matter, Defendants contend that Omnipoint's claims under the Act are barred by the applicable statute of limitations.

The Act vests federal courts with the authority to review actions or omissions by state and local governments regarding the construction of telecommunications equipment. *See* 47 U.S.C. § 332(c)(7)(B)(v). A plaintiff, however, must seek judicial review within 30 days after the action or failure to act. *Id.* Here, Omnipoint received its construction permits on June 14, 1999, and its tower became operational on June 30, 1999. Thus, Omnipoint should have filed its complaint no later than September 1, 1999. It, however, did not file this action until November 12, 1999. Docket No. 1. Nonetheless, Defendants did not plead or raise in a timely manner the statute of limitations affirmative defense. *See* Docket No. 4; *see also Chimblo v. Commissioner of Internal Revenue,* 177 F.3d 119, 125 (2d Cir.1999) ("As a general matter, the statute of limitations is an affirmative defense that must be pleaded; it is not jurisdictional."). Defendants do not assert, and the record does not reflect,

any reason why this affirmative defense should not be deemed waived.

Accordingly, Defendants' contention that Omnipoint's claims under the Act are time barred is rejected.

## B. Mootness Doctrine

█ Defendants also contend that the settlement agreement between Omnipoint and the Town Defendants render this action moot. Omnipoint confuses the mootness doctrine with Fed.R.Civ.P. 19, which sets forth the requirements for joinder of a necessary party. The former is an aspect of Article III jurisdiction, while the latter ensures the rights of all stakeholders in the subject matter and prevents inconsistent judicial outcomes.

Here, Omnipoint seeks three types of relief: 1) an order declaring that Local Law No. 1 violated the Act, the United States Constitution, the New York State Constitution, as well as other federal and state statutes; 2) an order declaring Defendants violated its rights under the United States Constitution; and 3) an order requiring Defendants to refund all fees received from the Town under the Local Law, plus interest. Article III jurisdiction requires the presence of a case or controversy throughout the litigation. This requires Omnipoint to continue to have a " 'legally cognizable interest in the outcome' of [the] case" throughout the duration of this litigation, otherwise it is moot and must be dismissed. *Muhammad v. City of N.Y. Dep't of Corr.*, 126 F.3d 119, 122–23 (2d Cir.1997) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). In the settlement with the Town Defendants, however, the Town declared that Local Law No. 1 was illegal. Docket No. 17.

Further, on November 15, 1999, Local Law No. 1 was rescinded by the terms of Local Law No. 2. Def. 7.1 Statement, ¶ 35. Thus, Omnipoint no longer has a "personal stake" in this Court declaring Local Law No. 1 illegal.[2]

Accordingly, Omnipoint's requests for an order declaring Local Law No. 1 illegal under various federal and state statutory and constitutional provisions are moot.

## C. Standing

Another aspect of Article III jurisdiction is the doctrine of standing. *See Garelick v. Sullivan*, 987 F.2d 913, 919 (2d Cir. 1993). While neither party raised the issue of standing, "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important' of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citations omitted)).

The issue of standing should be examine at the initiation of the action and involves both constitutional and prudential requirements. Under the constitutional requirements, a plaintiff must demonstrate that: 1) he or she has suffered an "injury in fact;" 2) there is a causal connection between the injury and the conduct at issue; and 3) the injury is capable of being redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Even where a plaintiff satisfies these constitutional requirements, "a court may nevertheless deny standing for prudential reasons." *Comer v. Cisneros*, 37

---

**2.** Throughout its papers, Omnipoint repeatedly refers to other localities in which Defendants are "peddling" their illegal model ordinance. Assuming this assertion to be true, it does not create a stake in this litigation. Indeed, it appears as if Omnipoint seeks nothing more than an advisory opinion from this Court, which is of course, wholly inappropriate. *See Center for Reproductive Law & Policy v. Bush*, 304 F.3d 183, 195 (2d Cir.2002).

F.3d 775, 787 (2d Cir.1994) (quotation marks and citation omitted). These prudential requirements act as "rules of judicial self-restraint" and suggest, *inter alia,* that a plaintiff may not rest his or her claim on the legal rights of a third-party. *See Sullivan v. Syracuse Housing Auth.,* 962 F.2d 1101, 1106 (2d Cir.1992) (citations omitted).

■ Here, Omnipoint seeks an order: 1) declaring that Defendants violated the Act and the Constitution; and 2) directing Defendants to refund the fees they received by the Town under the consulting services contract. With respect to Omnipoint's declaratory relief, it "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [it] will be injured in the future." *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 105–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). When Omnipoint filed this action, it had withdrawn its 1998 proposal to lease Town property and its 1999 application to build a telecommunications tower had been approved. Further, the moratorium had expired and the Town had already accepted Defendants advice and enacted Local Law No. 1. Thus, Omnipoint may not rely on these past injuries, but must show a likelihood of injury in the future.

The record, however, demonstrates that Defendants no longer provide services in the Town. Comi Aff. (Docket No. 30), ¶ 22. Therefore, Omnipoint will not have to negotiate any future lease proposals in the Town with the Defendants. Further, Defendants will not be reviewing any future Omnipoint applications for the construction of telecommunication towers in the Town. To the extent Omnipoint may have dealing with Defendants in other localities is outside the scope of this litigation and is irrelevant. Thus, Omnipoint has not established that it will likely be harmed by Defendants in the future and it lacked standing to seek declaratory relief.

With respect to Omnipoint's request for an order directing Defendants to refund the compensation they received under the consulting services contract, it is assumed Omnipoint has satisfied the constitutional requirements of standing. Nonetheless, prudential concerns direct this Court to exercise self-restraint. Omnipoint contends that Defendants charged the Town a fee for negotiating the failed 1998 lease proposal and then that charge was added onto the application fee. *See* Kulik Decl., ¶ 14 & Ex. B. Assuming this to be true, the application fee was assessed by the Town and Omnipoint paid the Town. Similarly, Defendants billed the Town for their services and the Town paid the Defendants under the contract. Both Omnipoint and Defendants were in privity with the Town, but there were not in privity with each other. In essence, Omnipoint is asking this Court to hold that Defendants breached the consulting services contract they had with the Town and to direct Defendants to refund their compensation under the contract. Omnipoint is neither a party to this contract nor a third-party beneficiary. Therefore, it lacked standing to seek such relief. *See Eaves Brooks Costume Co., Inc. v. Y.B.H. Realty Corp.,* 76 N.Y.2d 220, 557 N.Y.S.2d 286, 289, 556 N.E.2d 1093 (1990).

Omnipoint contends that it does not need to be in privity of contract because the Town assigned to Omnipoint "any and all rights to recover under any cause of action against ... defendants for any claim the Town may have against them relative to this suit." *See* Settlement Agreement (Docket No. 17), ¶ 9. The problem with Omnipoint's contention is that the Town never asserted any cross-claims against Defendants in its answer. Docket No. 2. While Omnipoint may have the right

to sue Defendants for breach of contract, it has failed to plead or prove, and the record does not demonstrate, such cause of action.

Accordingly, Omnipoint's request for declaratory relief or an order directing Defendants to refund the fees they received by the Town under the consulting services contract are dismissed because Omnipoint lacked standing to challenge Defendants' conduct in negotiating the 1998 lease of Town property or in reviewing the 1999 application to build a telecommunications tower.

## IV.  Remaining Issue

██ It is worth noting that Local Law No. 1 was still in effect when Omnipoint filed this action. Therefore, there is *some* basis for arguing that Omnipoint has standing to claim that Defendants violated its rights when they proposed and drafted the language of Local Law No. 1. Nonetheless, Defendants correctly contend that they were not acting under color of state law when they advised the Town on, or drafted the language of, Local Law No. 1.

"[Section] 1983, enacted pursuant to the authority of Congress to enforce the Fourteenth Amendment, prohibits interference with federal rights under color of state law." *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The color of state law requirement has been analyzed identically to the "state action" requirement of the Fourteenth Amendment. *See id.* at 841, 102 S.Ct. 2764. Generally, private actors are not liable under section 1983 unless "the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *see also American Manfs. Mut. Ins. Co. v. Sullivan,* 526 U.S.

40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Moreover, a plaintiff bears the burden of proof to establish that the acts of private persons or entities constitute state action under section 1983. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1082–83 n. 3 (2d Cir.1990).

Federal courts have generally used four tests [3] to determine whether a private actor has acted under color of state law. These tests are: 1) the public function test; [4] 2) the close-nexus test; 3) the symbiotic relationship test; and 4) the joint activity test. *See Island Online, Inc. v. Network Solutions, Inc.,* 119 F.Supp.2d 289, 304–07 (E.D.N.Y.2000). Omnipoint contends that tests one through three, but not four, are applicable here. Thus, the joint activity test is not discussed.

First, "[t]he 'public function' test is more accurately described as an 'exclusive public function' test." *Id.* at 305 (quoting *Rendell–Baker,* 457 U.S. at 842, 102 S.Ct. 2764). This test is strictly limited to instances where the private actor performs functions that are "traditionally the exclusive prerogative of the State." *Id.* (quotation marks and citation omitted). This test was first recognized by the Supreme Court in *Marsh v. Alabama,* 326 U.S. 501, 507–08, 66 S.Ct. 276, 90 L.Ed. 265 (1946). In *Marsh,* "[t]he town was indistinguishable from any other municipality, but there was one crucial difference—the company owned the entire town and had taken over all municipal functions." *State v. Wicklund,* 589 N.W.2d 793, 797 (Minn.1999). Omnipoint relies on *Marsh* in support of its contention that Defendants acted under color of state law when it advised and

---

**3.** While the case law refers to four tests, courts have used these tests interchangeably and the test do not always fall into easily identifiable categories.

**4.** The public function test is also referred to at the traditional powers test.

drafted Local Law No. 1. Specifically, Omnipoint asserts that the company in *Marsh* was engaged in a traditional public function, i.e., the issuance of permits. Further, Omnipoint asserts the Defendants here were engaged in a traditional public function, i.e., land use planning. However, unlike the company in *Marsh*, the Defendants here do not own nor operate the Town. Moreover, the facts here are easily distinguishable from *Marsh*, where the company itself issued the permits. Here, Defendants may have been actively involved in the legislative process, but in the end, it was the Town that accepted Defendants' advice and enacted Local Law No. 1. Therefore, Omnipoint's contention is rejected.

Second, the close-nexus and symbiotic relationship tests are very similar and are thus, discussed together. The close-nexus test considers whether there is a sufficiently close nexus between the state and the challenged action so that the action of the private actor "may be fairly treated as that of the state itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). The state must have exercised "coercive power" or "such significant encouragement ... that the choice must in law be deemed that of the State." *Id.* The symbiotic relationship test considers whether the state has "so far insinuated itself into a position of interdependence with the private actor that there is a 'symbiotic relationship' between them." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). The Supreme Court has limited this test "to cases involving leases of public property," *Island Online*, 119 F.Supp.2d at 306 (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 358, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)), and thus, it is not applicable here. Moreover, these tests usually examine the conduct of the state, not the conduct of the private entity. *See Blum*, 457 U.S. at 1004, 102 S.Ct. 2777.

Nonetheless, a private actor may be found to have acted under color of state law where he or she "has operated as a willful participant in joint activity with the state or its agents." *See Gorman–Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 551–52 (2d Cir. 2001). Here, Omnipoint contends that Defendants acted under color of state law when they drafted the language of Local Law No. 1. Defendants' conduct, however, was mere advice. Where a private actor merely provides professional advice, such advice cannot be considered state action for purposes of section 1983. *See, e.g., Goetz v. Windsor Cent. Sch. Dist.*, 593 F.Supp. 526, 528–29 (N.D.N.Y.1984). Furthermore, if this Court were to adopt Omnipoint's contention, any private citizen that recommended proposed legislation or drafted proposed legislation that was subsequently declared unconstitutional would be subject to liability under section 1983. While Defendants provided advice, it was ultimately the Town's decision to accept that advice.

Therefore, Defendants were not acting under color of state law when they recommended and drafted proposed legislation.

WHEREFORE, it is hereby

**ORDERED** that Omnipoint's motion for summary judgment is **DENIED**;

**ORDERED** that Defendants' motion for summary judgment is **GRANTED**; and it is

**ORDERED** that the case is **DISMISSED** in its **ENTIRETY**.

**IT IS SO ORDERED.**