■ CASTLEPOINT INSURANCE COMPANY, as Subrogee of Royal Carting Services, Inc., Respondent-Appellant, v COMMAND SECURITY CORPORATION, Appellant-Respondent. [42 NYS3d 30]—

In an action to recover damages for negligence and breach of contract, the defendant appeals from so much of an order of the Supreme Court, Dutchess County (Rosa, J.), dated May 7, 2014, as denied its motion for summary judgment dismissing the complaint, and the plaintiff cross-appeals from so much of the same order as denied its cross motion for leave to amend the complaint to add "Panichi Holding Corp. doing business as Royal Carting Service Co." and "Watch Hill Holding Corp." as subrogors.

Ordered that the order is modified, on the law and in the exercise of discretion, by deleting the provision thereof denying the branch of the plaintiff's cross motion which was for leave to amend the complaint to add "Panichi Holding Corp. doing

business as Royal Carting Service Co." as subrogor, and substituting therefor a provision granting that branch of the cross motion; as so modified, the order is affirmed, with costs to the plaintiff.

Sometime during the night of August 28 to August 29, 2009, a fire broke out in a maintenance building owned by nonparty Watch Hill Holding Corp. (hereinafter Watch Hill), which was used as part of a residential and commercial trash and recycling collection business operated by Panichi Holding Corp., doing business as Royal Carting Service Co. (hereinafter Panichi). The building was part of a larger facility of nearly 10 acres, which included several other buildings as well as parking fields. The maintenance building and its contents were insured under a policy issued by the plaintiff, Castlepoint Insurance Company, in the name of "Royal Carting Service Co." Both Watch Hill and Panichi were listed as "extensions" of the named insured under the policy.

Pursuant to a security services agreement (hereinafter the agreement) dated June 6, 2002, entered into between the defendant, Command Security Corporation, and "Royal Carting Company," the defendant agreed to provide "a visible presence" at the facility, and "to observe and report." Because the facility employed its own security personnel during the week, the defendant was required only to provide one security guard during one weekend night. The standard rate payable for the defendant's services was $15 per hour. Under the terms of the agreement, the client acknowledged that the amounts payable to the defendant were "based upon the value of the services rendered" and were "unrelated to the value of the [c]lient's property or the property of others located in or about the client's premises." Thus, the client expressly agreed to "accept all risk of loss or damage to its premises, business and property of others on [c]lient's premise[s] occurring as the result of fire, theft or other casualty." Nevertheless, the defendant remained liable, subject to stated limits, for "property damage resulting from its negligence in performance of the services rendered under" the agreement. The agreement also made clear, in relevant part, that the services "are solely for the benefit of the [c]lient and neither this agreement nor any services rendered hereunder shall give rise to, or shall be deemed to or construed so as to confer any rights on any other party as a third party, beneficiary or otherwise."

The subject fire occurred on a night when a security guard employed by the defendant was on duty. Upon paying its insured the sum of $1,156,058.04, including the sums of

$455,736.59 for the real property, $663,212.10 for the business personal property, and $38,109.35 for extra expense items, less the insured's $1,000 deductible, the plaintiff, as the subrogee of "Royal Carting Services, Inc.," commenced this action against the defendant. After the completion of discovery, the defendant moved for summary judgment dismissing the complaint on the grounds that (a) the plaintiff failed to sue in the name of the proper subrogor, (b) the entities that incurred losses as a result of the fire, namely Watch Hill and Panichi, were neither parties to, nor third-party beneficiaries under, the agreement, and were otherwise precluded from seeking to recover against the defendant in tort, and (c) the defendant, in any event, did not negligently perform the services under the agreement so as to trigger its contractual liability. The plaintiff opposed the motion and cross-moved to add Watch Hill and Panichi as additional subrogors. The Supreme Court denied the defendant's motion, as well as the plaintiff's cross motion. However, the court, in effect, indicated that it would allow the plaintiff to correct the name of the subrogor from "Royal Carting Services, Inc." to "Royal Carting Service Co." (see CPLR 2001).

"Summary judgment is a drastic remedy that deprives a litigant of his or her day in court, and it 'should only be employed when there is no doubt as to the absence of triable issues' " (*Kolivas v Kirchoff*, 14 AD3d 493, 493 [2005], citing *Andre v Pomeroy*, 35 NY2d 361, 364 [1974]). The function of the court on a motion for summary judgment is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist (*see Dorival v DePass*, 74 AD3d 729 [2010]; *Rudnitsky v Robbins*, 191 AD2d 488 [1993]). Here, the Supreme Court properly denied the defendant's motion for summary judgment dismissing the complaint. The defendant failed to establish its prima facie entitlement to judgment as a matter of law. The transcripts of the deposition testimony submitted in support of its motion presented conflicting facts regarding the fire and failed to eliminate triable issues of fact as to whether the defendant was negligent in the performance of the services rendered under the agreement. Moreover, the court providently allowed the plaintiff, as the real party in interest, to correct the name of its subrogor pursuant to CPLR 2001 (*see Greenwich Ins. Co. v New Amsterdam Assoc.*, 111 AD3d 543, 544 [2013]; *Continental Ins. Co. v Marx Co.*, 220 AD2d 343, 344 [1995]).

"Leave to amend a complaint should be liberally granted absent prejudice to the opposing party, as long as the proposed amendment is not palpably insufficient to state a cause of ac-

tion" (*Dialcom, LLC v AT & T Corp.*, 50 AD3d 727, 728 [2008]; *see Morales v Zherka*, 140 AD3d 836 [2016]). "The merits of a proposed amendment to a pleading will not be examined unless the insufficiency or lack of merit is clear and free from doubt" (*see Gallagher v 109-02 Dev., LLC*, 137 AD3d 1073, 1073 [2016] [internal quotation marks omitted]).

Here, the Supreme Court improvidently exercised its discretion in denying that branch of the plaintiff's cross motion which was for leave to amend the complaint to add Panichi as a subrogor. The record evidence shows that Royal Carting Service Co. is not a separate legal entity, but merely the business name under which Panichi operates. Thus, while Panichi is the corporate owner and operator of the underlying carting and waste management business, the Royal Carting business name is used on letterhead, as well as invoices, receivables, and contracts. As such, there is a triable issue of fact as to whether Panichi is the real party in interest under the insurance policy as well as the agreement, both of which were entered into under the Royal Carting business name. Thus, the addition of Panichi as a subrogor was not palpably insufficient or patently devoid of merit. Moreover, the defendant will not be prejudiced or surprised by the amendment, which does not allege new or different transactions (*see Seidman v Industrial Recycling Props., Inc.*, 83 AD3d 1040 [2011]).

We reach a different conclusion, however, with respect to Watch Hill. Unlike Panichi, there is no indication in the record that Watch Hill operates under the Royal Carting name. Rather, it is alleged that Watch Hill merely owns the premises on which Panichi's business is run. Thus, while Watch Hill is listed as an "extension" of the named insured in the subject policy, there is nothing in the record to suggest that Watch Hill is either a party to, or an intended third-party beneficiary under, the agreement. To the contrary, the terms of the agreement make clear that there are no intended third-party beneficiaries. Thus, Watch Hill had no breach of contract cause of action against the defendant for the plaintiff to acquire through subrogation, and the proposed amendment to add Watch Hill as a subrogor is patently devoid of merit (*see Solomon v Consolidated Resistance Co. of Am.*, 97 AD2d 791, 791 [1983]).

"Under our decisional law a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party" (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]). Under some circumstances, however, "parties outside a contract are permitted to sue for tort damages aris-

ing out of negligently performed or omitted contractual duties" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 586 [1994]). Where, as here, the action involves property damage, the public policies, factors, and other analytical considerations used in setting the orbit of duty are different from those at play in cases involving physical injury (*compare Moch Co. v Rensselaer Water Co.*, 247 NY 160 [1928], *and Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220 [1990], *with Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d at 587-588). Under the facts presented, we find that the defendant had no cognizable duty owed to Watch Hill (*see Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220 [1990]; *Moch Co. v Rensselaer Water Co.*, 247 NY 160 [1928]), and therefore, Watch Hill had no negligence cause of action to transfer to the plaintiff. Accordingly, the Supreme Court providently exercised its discretion in denying that branch of the plaintiff's cross motion which was for leave to amend the complaint to add Watch Hill as a subrogor. Chambers, J.P., Austin, Sgroi and Cohen, JJ., concur.