[35 NYS3d 686]

Juan Santos, Respondent, v Deanco Services, Inc., Appellant, et al., Defendant. Deanco Services, Inc., Third-Party Plaintiff, v BTN Excavating Services, Inc., Third-Party Defendant.

Second Department, July 13, 2016

APPEARANCES OF COUNSEL

*Kornfeld, Rew, Newman & Simeone*, Suffern (*William S. Badura* of counsel), for appellant.

*Neimark & Neimark LLP*, New City (*Ira H. Lapp* and *George G. Coffinas* of counsel), for respondent.

**OPINION OF THE COURT**

DILLON, J.P.

We are called upon to determine, for the first time in this judicial department, whether a snow removal contractor may be found liable in a personal injury action under *Espinal v Melville Snow Contrs.* (98 NY2d 136 [2002]) on the ground that the snow removal contractor's passive omissions constituted the launch of a force or instrument of harm, where there is no evidence that the passive conduct created or exacerbated a dangerous condition. We find that liability cannot be imposed under such circumstances.

I. Facts

In August 2014, this matter was tried before a jury in the Supreme Court, Rockland County. The trial addressed the issue of liability only.

The underlying events occurred during the early morning hours of January 11, 2009 at a Lowe's Home Improvement store located in Middletown, New York. At that date, time, and

place, the plaintiff, Juan Santos, was employed as Lowe's' store manager. A contract existed between Lowe's and the defendant Deanco Services, Inc., whereby Deanco was to provide snow removal services on the premises. On the subject morning, Richard Laput, a Lowe's employee, slipped and fell in an area behind the store known as the "bullpen." The bullpen, which was used to store overstock lumber and other materials, was about 50 feet by 100 feet in size and surrounded by a chain link fence. This area was only accessible to employees. The plaintiff went to the bullpen to investigate Laput's accident, at which time he observed icy conditions there. Shortly thereafter, the plaintiff returned to the bullpen for a second time to lock a gate located across the bullpen. As he was walking to the gate, the plaintiff slipped and fell in the middle of the bullpen. The plaintiff contends that although the area had been plowed from a recent storm, there was ice in the bullpen and no indication that salt had been applied. The plaintiff did not know how the ice had formed or for how long it was present before his fall.

The subject snow removal contract provided that Deanco was to plow snow accumulations of two inches or more, apply salt to accumulations of less than two inches, and use a sand and salt mixture for accumulations of less than two inches if salt alone was insufficient to treat heavy icing. Deanco's president, Andrew DiPaul, conceded that the snow removal contract applied to the bullpen area. Deanco subcontracted with the defendant/third-party defendant, BTN Excavating Services, Inc., to service Lowe's' premises, and it is undisputed that BTN performed snow removal services on the morning of the plaintiff's accident.

The evidence admitted at the trial did not include any meteorological data regarding the recent storm, expert witness testimony about the storm or its conditions, photographs, or surveillance video. Copies of Lowe's' contract with Deanco and Deanco's subcontract with BTN were admitted into evidence, with the latter providing that BTN would plow Lowe's' premises for "[e]very 2 to 3 [inches] of snow . . . [and] [a]t the end of storm parking lot will be completely cleaned."

The jury returned a verdict finding both Deanco and the plaintiff negligent and apportioning their comparative fault 50%-50%. BTN was not a participant at the trial. Deanco moved pursuant to CPLR 4404 to set aside the verdict, arguing, as it had unsuccessfully argued under CPLR 4401 at the close of the plaintiff's case and at the close of evidence, that it

owed no duty to the plaintiff and had launched no force or instrument of harm so as to make the icy condition worse. The Supreme Court denied the motion. A judgment was subsequently entered adjudging Deanco 50% at fault in the happening of the accident and the plaintiff 50% at fault. Deanco appeals.

## II. Legal Analysis

The leading authority governing the liability issues of this action is *Espinal v Melville Snow Contrs.* (98 NY2d 136 [2002]), an opinion authored by Judge Rosenblatt of the Court of Appeals in 2002. In *Espinal*, the Court of Appeals examined the circumstances of whether and when a snow removal contractor, who entered into a contract with the property owner, may be liable to a plaintiff not in contractual privity, when the contractor's negligence caused or contributed to the plaintiff's accident. The Court noted the well-established general rule, dating to at least 1928, that the breach of a contractor's contractual obligation does not give rise to tort liability to others not in privity with the contractor, as the duty flows between only the parties to the contract (*see Espinal v Melville Snow Contrs.*, 98 NY2d at 138-139, citing *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226 [1990], and *Moch Co. v Rensselaer Water Co.*, 247 NY 160 [1928]; *see also Stiver v Good & Fair Carting & Moving, Inc.*, 9 NY3d 253, 257 [2007]; *Javid v Sclafmore Constr.*, 117 AD3d 907 [2014]; *Rudloff v Woodland Pond Condominium Assn.*, 109 AD3d 810 [2013]; *Knox v Sodexho Am., LLC*, 93 AD3d 642 [2012]; *Henriquez v Inserra Supermarkets, Inc.*, 89 AD3d 899, 901 [2011]; *Lubell v Stonegate at Ardsley Home Owners Assn., Inc.*, 79 AD3d 1102, 1103 [2010]; *Foster v Herbert Slepoy Corp.*, 76 AD3d 210, 213 [2010]; *Salvati v Professional Sec. Bur., Ltd.*, 40 AD3d 735 [2007]). Nevertheless, the general rule, as with many rules in New York jurisprudence, is subject to certain exceptions. In this area of tort law, the Court of Appeals has defined three narrow circumstances under which a contractor may be liable in negligence to a plaintiff with whom there is no contractual privity, for circumstances related to its contractual obligation.

The first exception is where the contracting party, in failing to exercise reasonable care in the performance of contractual duties, launches a force or instrument of harm (*see Espinal v Melville Snow Contrs.*, 98 NY2d at 140; *Moch Co. v Rensselaer Water Co.*, 247 NY at 168).

The second exception is where the plaintiff detrimentally relies on the continuing performance of the contractor's duty

(*see Espinal v Melville Snow Contrs.*, 98 NY2d at 140; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d at 226-227).

The third exception is where the contracting party has entirely displaced the other contracting party's duty to maintain the premises safely (*see Espinal v Melville Snow Contrs.*, 98 NY2d at 140; *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 589 [1994]).

While the origins of these exceptions can be traced to law predating Judge Rosenblatt's opinion, they have collectively and colloquially come to be known in New York as the *"Espinal* exceptions." Only the first of these three exceptions is at issue here—whether the alleged passive failure of the snow removal contractor (or in this case, its subcontractor) to apply salt to the bullpen area at Lowe's qualified as the launching of a force or instrument of harm so as to impose tort liability on Deanco for the plaintiff's injuries.* This specific question is one of first impression in the Appellate Division, Second Department.

Although no meteorological data was introduced at trial, it was undisputed that there had been snowfall in the hours preceding the plaintiff's accident. It was also undisputed that the Lowe's parking lot and bullpen had been plowed by Deanco's subcontractor, BTN. The only potential basis for holding Deanco liable under these circumstances would be based on a conclusion that Deanco breached its snow removal contract with Lowe's when its subcontractor either failed to salt the bullpen or did so inadequately. To determine whether such a conclusion can rationally qualify as a launch of a force or instrument of harm, we must examine the decisional authorities interpreting the first of the *Espinal* exceptions.

Uniformly, a launch of a force or instrument of harm has been interpreted as requiring that the contractor create or exacerbate the dangerous condition (*see Fung v Japan Airlines Co., Ltd.*, 9 NY3d 351, 361 [2007]; *Church v Callanan Indus.*, 99 NY2d 104, 112 [2002]; *Espinal v Melville Snow Contrs.*, 98 NY2d at 142; *Javid v Sclafmore Constr.*, 117 AD3d at 908; *Rudloff v Woodland Pond Condominium Assn.*, 109 AD3d at 811; *Knox v Sodexho Am., LLC*, 93 AD3d at 642-643; *Henriquez v Inserra Supermarkets, Inc.*, 89 AD3d at 902; *Quintanilla v*

---

* The "detrimental reliance" exception of *Espinal* was previously disposed of in Deanco's favor in a pretrial summary judgment motion and appeal (*see Santos v Deanco Servs., Inc.*, 104 AD3d 933 [2013]).

*John Mauro's Lawn Serv., Inc.*, 79 AD3d 838, 839 [2010]; *Foster v Herbert Slepoy Corp.*, 76 AD3d at 215; *Castro v Maple Run Condominium Assn.*, 41 AD3d 412, 413-414 [2007]; *Salvati v Professional Sec. Bur., Ltd.*, 40 AD3d at 736). This requirement is consistent with the use of the word "launch" in *Espinal*. Launch is an action verb, requiring by definition evidence that the contractor affirmatively left the premises in a more dangerous condition than it was found (*see Rudloff v Woodland Pond Condominium Assn.*, 109 AD3d at 811; *Foster v Herbert Slepoy Corp.*, 76 AD3d at 215). In the abstract, a party's passive omissions might also conceivably create or exacerbate a dangerous condition just as active omissions, particularly in light of New York's general elimination of the distinction between active and passive negligence (*see Dole v Dow Chem. Co.*, 30 NY2d 143, 148 [1972]). In either instance, however, evidence must still be introduced linking the conduct to the creation or exacerbation of the condition.

To suggest, as does the plaintiff, that a mere omission by a contractor, without more evidence, may constitute a launch of a force or instrument of harm, decimates the meaning of the first *Espinal* exception. In other words, the first *Espinal* exception would be limitless, triggered upon any breached contract, and have the practical effect of entirely abrogating the general rule that contractors owe no duty to plaintiffs with whom they are not in contractual privity. Without requiring, in the context of the first *Espinal* exception, proof that the contractor's conduct created or exacerbated the icy condition, any breach of contract could always be conflated with tort liability, even though breach of contract and tort liability are two separate concepts. In our view, for the jury's verdict to be rational, there needs to be evidence in the record that BTN's failure to salt at the bullpen created the icy condition on which the plaintiff fell, or exacerbated it.

The trial record is devoid of any evidence regarding the cause, creation, or exacerbation of the icy condition. No evidence was presented as to when the ice first materialized or how long it had been present before the accident. There were no climatology records admitted into evidence regarding the nature of the recent storm, the air temperature prior, during, and after the storm, or potential snowmelt and refreeze. There was no evidence as to when the bullpen was plowed in relation to the time of the plaintiff's accident, and there was no expert testimony regarding the standard of care that may have been

violated if, contractual language aside, no salt or sand/salt mixture were applied under the circumstances present. Moreover, there was no evidence that the icy condition at the bullpen worsened between when it arguably should have been salted and the time of the plaintiff's accident.

Absent at least some of the foregoing evidence, a determination that the failure to salt created or exacerbated the icy condition within the bullpen would be speculative. Indeed, a failure to apply salt would ordinarily neither create ice nor exacerbate an icy condition, as the absence of salt would merely prevent a preexisting ice condition from *improving* (*see Stiver v Good & Fair Carting & Moving, Inc.*, 9 NY3d at 257; *Rudloff v Woodland Pond Condominium Assn.*, 109 AD3d at 811; *Foster v Herbert Slepoy Corp.*, 76 AD3d at 215). That distinction is crucial, as it has been held that the first of the *Espinal* exceptions cannot be triggered where, as here, there is only speculation and conjecture regarding whether the contractor created or exacerbated an icy condition (*see Javid v Sclafmore Constr.*, 117 AD3d at 908; *Rudloff v Woodland Pond Condominium Assn.*, 109 AD3d at 811; *Foster v Herbert Slepoy Corp.*, 76 AD3d at 215). The jury could not reasonably infer that the failure to apply salt to the bullpen created or exacerbated an icy condition, as there were no facts in evidence from which such an inference could be drawn.

We reject the plaintiff's contention that several decisions from the Appellate Division, First Department compel a different conclusion. Initially, we note that First Department cases are not controlling authority on this Court (*see Smithtown Gen. Hosp. v Allstate Ins. Co.*, 111 AD2d 382, 383 [1985]). Further, the cases cited by the plaintiff—*Jenkins v Related Cos., L.P.* (114 AD3d 435 [2014]), *Ramirez v BRI Realty* (2 AD3d 369 [2003]), and *Figueroa v Lazarus Burman Assoc.* (269 AD2d 215 [2000])—are readily distinguishable. *Ramirez* does not cite the Court of Appeals' decision in *Espinal*, and *Figueroa* predates *Espinal*. *Jenkins* involved a summary judgment motion where the defendant's burden of proof in support of such a motion is different than that of a plaintiff's burden of proof at trial.

> " 'A motion for judgment as a matter of law pursuant to CPLR 4401 or 4404 may be granted only when the trial court determines that, upon the evidence presented, there is no valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusion reached by

the jury upon the evidence presented at trial, and no rational process by which the jury could find in favor of the nonmoving party' " (*Rumford v Singh*, 130 AD3d 1002, 1003-1004 [2015], quoting *Tapia v Dattco, Inc.*, 32 AD3d 842, 844 [2006]; *see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]).

In considering such a motion, trial courts " 'must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant' " (*Rumford v Singh*, 130 AD3d at 1004, quoting *Szczerbiak v Pilat*, 90 NY2d at 556).

Applying the aforesaid standard here, we conclude that, affording the plaintiff the benefit of every favorable inference which may properly be drawn from the facts and viewing the facts in the light most favorable to him, there is no valid line of reasoning, permissible inferences, or rational process by which the jury could find Deanco at fault in the happening of the accident. Even if Deanco breached its contract with Lowe's through the failure to apply salt, the plaintiff offered ·nothing more than speculation that the failure to perform such duty created or exacerbated the condition that existed when Deanco's subcontractor commenced its work (*see Church v Callanan Indus.*, 99 NY2d at 112; *Foster v Herbert Slepoy Corp.*, 76 AD3d at 215; *Crosthwaite v Acadia Realty Trust*, 62 AD3d 823, 825 [2009]). Accordingly, under the facts of this case, the Supreme Court should have granted Deanco's motion pursuant to CPLR 4404 for judgment as a matter of law dismissing the complaint insofar as asserted against it.

The parties' remaining contentions either are without merit or have been rendered academic by our determination.

Therefore, the interlocutory judgment is reversed, on the law, Deanco's motion pursuant to CPLR 4404 for judgment as a matter of law dismissing the complaint insofar as asserted against it is granted, and the complaint is dismissed insofar as asserted against Deanco.

DICKERSON, COHEN and DUFFY, JJ., concur.

Ordered that the interlocutory judgment is reversed, on the law, without costs or disbursements, the motion of the defendant Deanco Services, Inc., pursuant to CPLR 4404 for judgment as a matter of law dismissing the complaint insofar as

asserted against it is granted, and the complaint is dismissed insofar as asserted against the defendant Deanco Services, Inc.