**Bronner v Central Consulting & Contr., Inc.**

2024 NY Slip Op 33640(U)

October 9, 2024

Supreme Court, New York County

Docket Number: Index No. 150475/2022

Judge: Richard G. Latin

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. RICHARD G. LATIN**                    PART    46M

*Justice*

-------------------------------------------------------------------------------X

ANNE BRONNER,

                              Plaintiff,

                   - v -

CENTRAL CONSULTING & CONTRACTING, INC. and
LENOX HILL HOSPITAL,

                       Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 150475/2022 |
| MOTION DATE | 1/23/2024, 1/23/2024 |
| MOTION SEQ. NO. | 001, 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 82, 84, 85, 86, 87, 88, 89, 90, 91, 100, 101

were read on this motion to/for                   JUDGMENT - SUMMARY           .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 83, 92, 93, 94, 95, 96, 97, 98, 99, 102, 103, 104

were read on this motion to/for                   JUDGMENT - SUMMARY           .

In this personal injury action commenced by plaintiff Anne Bronner, defendant Central Consulting & Contracting, Inc. ("Central") moves for an order pursuant to CPLR 3212 granting it summary judgment and dismissing plaintiff's claims and the cross claims of defendant Lenox Hill Hospital ("LHH") against it. LHH moves for an order pursuant to CPLR 3212 granting it summary judgment and dismissing plaintiff's claims against it and pursuant to CPLR 3212 (e) and (g), granting it partial summary judgment and dismissing all claims for which plaintiff is unable to raise a triable issue of fact. For the foregoing reasons, Central's motion is granted and LHH's motion is denied in its entirety.

**150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL**          **Page 1 of 13**
   Motion No.  001 002

1 of 13

**Factual Background**

The alleged incident occurred on August 13, 2021, at approximately 9:00 p.m., on the sidewalk abutting 100 East 77th Street, New York, New York, between Lexington Avenue and Park Avenue, particularly between the main entrance of LHH and Park Ave (NYSCEF Doc No. 48 ¶ 1, Verified Bill of Particulars). There was an oxygen pipe on the sidewalk from a portable oxygen trailer to the planter box covered with a two-way ramp (NYSCEF Doc No. 52, tr at 33-34). This was a wood ramp installed by LHH (*id.* at 85-86). The ramp had a black cover with a wood base (*id.* at 115). The purpose of the wood ramp was for pedestrian safety, to protect the oxygen piping beneath, and to ensure people could cross over the pipping without tripping on it (*id.* at 77, 79). There was no lighting installed to shine on the area of the wood ramp prior to August 13, 2021 (*id.* at 121).

At her deposition, plaintiff testified that on the date of the incident, she was walking on the sidewalk abutting LHH's building from Lexington Avenue to Park Avenue with her husband (NYSCEF Doc No. 49, tr at 34, 73-74). It was dark (*id.* at 37). She was wearing open toe sandals (*id.* at 75). She was not listening to music or talking on the phone (*id.* at 76-77). She testified that as she was walking, her foot made contact with a cord cover, and she fell down (*id.* at 79). She stood up after her fall and she was standing on the cord cover (*id.* at 82). Plaintiff described the cord cover as "[a] black raised with a slope from the sidewalk to the horizontal surface" (*id.* at 38). She testified that there was no colored fluorescent tape or yellow top on the surface (*id.* at 38-39). She did not recall seeing any orange construction cones near the cord cover (*id.* at 39). She fell on her left side and hurt her left arm and left hip (*id.* at 79-80). Plaintiff's husband, Abraham Jay Bronner, M.D. ("Dr. Bronner") testified that he saw plaintiff's front part of her foot come into contact with the ramp, and she fell towards her left (NYSCEF Doc No. 74, tr at 21). He confirmed

**150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL          Page 2 of 13**
**Motion No.  001 002**

2 of 13

[* 2]

it was dark (*id.*). He described the ramp as black in color, slanted from both sides, and occupying the entire walkable surface of the street (*id.* at 23-25). He further testified that plaintiff's left side and lower abdomen were in the center of the ramp (*id.* at 41).

At his deposition, Agosh Gaur, the Design and Construction Project Manager at Northwell Health, owner of LHH, testified that he had a discussion with Central about replacing the wood ramp prior to August 13, 2021 (NYSCEF Doc No. 52, tr at 61). He further testified that Central was on site prior to August 13, 2021 to secure the site of the trailer, fencing, and cones (*id.* at 84).

Richard Simone, the founder, president and CEO of Central was contracted by LHH to perform renovations for LHH including an infrastructure oxygen system upgrade (NYSCEF Doc No. 50, tr at 21-23). It was contracted as a design-builder[1] (*id.* at 25). He testified that Central employees were scheduled to first arrive at the job site on August 23, 2021 (NYSCEF Doc No. 51, tr at 128). When Central arrived on the job site on August 23, 2021, there was a "plywood ramp" already on the sidewalk (NYSCEF Doc No. 50, tr at 73). The temporary ramp was not a part of the planning process (NYSCEF Doc No. 51, tr at 145). Central removed the plywood ramp and replaced it with the cable ramp specified in the drawings (*id.* at 127). The cable guard ("cable cover") was not selected by Central but was selected by H.F. Lenz, the engineering company, prior to August 6, 2021 (NYSCEF Doc No. 50 and 51, tr at 65, 156). He described the color of the wood ramp in a photograph dated August 12, 2021, as a dark color, either dark brown or black (NYSCEF Doc No. 51, tr at 171). There was no visibility tape or paint illuminating reflectors in and around the area of the wood ramp (*id.*).

---

[1] Design-builder hires the engineering firm that would design the system and drawings.

**150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL          Page 3 of 13
Motion No.  001 002**

[* 3]

## **Standard for Summary Judgment**

"'[T]he proponent of a summary judgment motion must make prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "[F]ailure to make such a showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*Ayotte*, 81 NY2d at 1063 [internal quotation marks and citation omitted]). "Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Alvarez*, 68 NY2d at 324; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman*, 49 NY2d at 562).

"Summary judgment should not be granted where there is any doubt as to the existence of a factual issue or where the existence of a factual issue is arguable" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 315 [2004]; *see also American Home Assur. Co. v Amerford Intl. Corp.*, 200 AD2d 472, 473 [1st Dept 1994]). "On a summary judgment motion, facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]).

### **Central's Duty of Care to Plaintiff (Mot Seq. 01)**

**Parties' Contentions**

Central contends that it did not owe a duty of care to plaintiff as none of the exceptions in *Espinal v Melville Snow Contrs., Inc.*, 98 NY2d 136 [2002] apply (NYSCEF Doc No. 45, Affirmation in Support of Thomas A. Montiglio, Esq. (aff), at 3). First, plaintiff could not rely on

**150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL          Page 4 of 13**
**Motion No.  001 002**

4 of 13

[* 4]

the continued performance of Central's duties as it did not begin to perform any construction and/or physical work at the incident location prior to the date of plaintiff's accident (*id.* at 4). Second, on the date of the accident, LHH retained the duty to maintain the premises safely (*id.* at 5). LHH had a project manager, who was responsible for the job and to minimize pedestrian hazards (*id.*). Lastly, the ramp was constructed and placed by LHH prior to Central's work and Central's work did not exacerbate the condition of the ramp prior to the date of the accident (*id.*).

In support of its motion, Central submits the affidavit Jeff Guagliardo, superintendent for Central, who attested that the first date upon which employees of Central performed any physical work at LHH was on August 23, 2021 (NYSCEF Doc No. 57, ¶ 4). Neither him nor any of Central's employees performed any construction work or any work to the ramp prior to August 23, 2021 (*id.* ¶¶ 6-7). The same was attested to by Nunziato Muccio, the project executive and Tamika Pounds, the project manager (NYSCEF Doc Nos. 58 and 59).

In opposition, plaintiff argues there is a triable issue of fact as to whether Central took part in the placement or decision to continue to use the LHH constructed homemade wood ramp as Central provided an updated plan concerning the temporary oxygen trailer cabling and homemade wood ramp prior to the incident (NYSCEF Doc No. 84, Affirmation in Opposition of Benjamin P. Jacobs, Esq. [opp aff], at 10). Additionally, an email from Central to LHH shows that Central was directing and instructing LHH in how to conduct the movement/reinstallation of the temporary oxygen trailer and the ramp with an updated site plan (*id.* at 19). Plaintiff argues that Central was aware of the nature of the ramp and did not instruct LHH to replace it with a safer one, making it a party to the continued use of the ramp (*id.*).

In reply, Central argues that plaintiff failed to satisfy the first exception to the *Espinal* case, which requires a showing that Central launched a force or instrument of harm which caused

**150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL**          **Page 5 of 13**
**Motion No.  001 002**

5 of 13

[* 5]

plaintiff's accident (NYSCEF Doc No.100, Reply Affirmation of Thomas A. Montiglio, Esq. (reply aff), at 2). Plaintiff's argument that Central submitted drawings for the replacement of the ramp and Central's knowledge of the ramp are not sufficient to satisfy the *Espinal* exception (*id.*). Furthermore, Central argues that plaintiff failed to argue Central's action fall under the second or third exception (*id.*).

## Discussion

When the personal injury issue concerns a contractor hired to perform work at a property, the contractor is liable to the entity that hired it, but generally does not owe a duty of care, and is not liable in tort or for breach of contract for injuries sustained by a third party, unless one of three exceptions apply (*see Espinal*, 98 NY2d at 138). The three exceptions are:

> "(1) where the contracting party, in failing to exercise reasonable care in performance of its duties, launches a force or instrument of harm; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties; and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely" (*id.* at 140 [internal quotation marks and citations omitted]).

The court finds that Central has established entitlement to summary judgment as a matter of law. Based upon *Espinal*, it is clear that Central did not owe a duty to plaintiff. Under the first exception, the contractor who creates or exacerbates a dangerous condition is said to have launched it (*id.* at 142-143). A contractor "while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk (*Church v Callanan Indus.*, 99 NY2d 104, 111 [2002]). "Launch is an action verb, requiring by definition evidence that the contractor affirmatively left the premises in a more dangerous condition than it was found" (*Santos v Deanco Servs., Inc.*, 142 AD3d 137, 141 [2d Dept 2016] [citations omitted]). There is no evidence that Central negligently created or exacerbated any dangerous condition at the subject

**150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL**          **Page 6 of 13**
**Motion No.  001 002**

6 of 13

[* 6]

location such that they would be liable for plaintiff's injuries. The record demonstrates that Central did not perform any work on the sidewalk where plaintiff allegedly tripped and fell (*see Severinghaus v TUFCO, Inc.*, 208 AD3d 1119, 1120 [1st Dept 2022] [defendant contractor did not perform any work on the sidewalk where plaintiff allegedly tripped and fell]). Gaur testified that the wood ramp was installed by LHH. Simone testified that other than hiring H.F. Lenz, the engineering company, and reviewing the drawings, plans and specifications, Central did not do any work prior to the incident date (*see* NYSCEF Doc No. 50, tr at 27). Central did not physically perform any work with regard to the ramp prior to August 23, 2021 (*see* NYSCEF Doc Nos. 57-59). The testimonies establish that Central's work "[did] not rise to the requisite standard of creating a dangerous condition so as to be deemed to have launched a forced or instrument of harm" (*Davies v Ferentini*, 79 AD3d 528, 530 [1st Dept 2010] [citations omitted]). In opposition, plaintiff failed to raise a triable issue of fact. Contrary to plaintiff's contention, Central did not launch a force or instrument of harm by revising the alignment of the ramp cable guard design, since "a contractor launches a force or instrument of harm where its affirmative act creates a dangerous condition" (*Dibrino v Rockefeller Ctr. North, Inc.*, 215 NYS3d 13, 20-21 [1st Dept 2024], quoting *Trawally v City of New York*, 137 AD3d 492, 492 [1st Dept 2016]). Gaur testified that the email from Central to LHH on August 9, 2021, referred to a revision of the diagram, and not a physical action (*see* NYSCEF Doc No. 52, tr 141-142). Furthermore, plaintiff's argument that Central's failure to instruct LHH to replace the ramp is meritless, as "failure to diagnose and correct" does not constitute launching an instrument of harm under *Espinal* unless there is evidence that the contractor "created or exacerbated a dangerous condition" (*see Medinas v MILT Holdings LLC*, 131 AD3d 121, 128 [1st Dept 2015]). Based on the foregoing, plaintiff's complaint is dismissed against Central.

[* 7]

LHH did not oppose Central's motion seeking dismissal of LHH's cross claims. As discussed above, Central has demonstrated that its action did not cause or contribute to plaintiff's accident, and LHH did not oppose. Consequently, that branch of Central's motion for summary judgment dismissing the cross claims asserted against it is also granted.

### A.      Dangerous or Defective Condition (Mot Seq. 002)

**Parties' Contentions**

LHH first contends that that there was no dangerous condition present at the site of which it had notice to timely remedy (NYSCEF Doc No. 64, Affirmation in Support of Nicole Callahan, Esq. (aff), at 10). It argues that New York City Administrative Code §§ 7-210 and 9-152 are inapplicable as they are not related to pedestrian ramps or cable guards (*id.* at 8). The ramp at issue was not a tripping hazard and did not present a dangerous condition (*id.* at 9). It is a common and accepted practice to utilize a ramp to cover and protect pipes and avoid the tripping hazards (*id.*). The plans for the temporary oxygen tank which were approved by the New York City Fire Department, called for an ELASCO Mighty Guard cable guard or an equivalent to cover the oxygen pipes, and the ramp was a proper equivalent (*id.*). Furthermore, the approved plans did not call for additional/supplemental lighting and the photographs show there was a light right above the ramp (*id.* at 10). Second, LHH argues that the ramp was an open and obvious condition and was not inherently dangerous as it spans the entire length of the sidewalk, covering piping that runs from a large oxygen tank surrounded by tall fencing (*id.* at 11). Lastly, LHH argues that it is unclear where the dangerous condition is because plaintiff's testimony shows that she assumed that the ramp caused her to trip because she landed on it when she fell (*id.* at 12).

In support of its motion, LHH submits the affidavit of a professional engineer, Anthony M. Dolhon (NYSCEF Doc No. 78, Dolhon Affidavit). Dolhon opined that although the approved

**150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL**          **Page 8 of 13**
**Motion No.  001 002**

8 of 13

designs specified an ELASCO product, the drawings also permitted an equivalent ramp (*id.* ¶ 22). Additionally, even though the ramp was not a Mighty Guard, it met the design intent and is the functional equivalent (*id.* ¶ 14). He further opined that there is no evidence that incident occurred because of the condition of the ramp or the condition of the sidewalk flags, and therefore Administrative Code § 7-210 (b) does not apply (*id.* ¶ 23). Additionally, he stated that there is no evidence that plaintiff's trip and fall incident occurred because of the condition of the sidewalk flags and therefore Administrative Code § 19-152(a) is inapplicable (*id.* ¶ 24).

In opposition, plaintiff first argues that Administrative Code § 7-210 imposes liability on property owners in connection with unsafe sidewalks abutting their property even when the property owners did not themselves create the dangerous condition, and LHH admitted it built and installed the ramp on the sidewalk (NYSCEF Doc No. 92, Affirmation in Opposition of Benjamin P. Jacobs, Esq. (opp aff), 8-9). She further argues that a property owner is liable for dangerous conditions when the owner created the dangerous condition, made negligent repairs that caused the condition or created the dangerous condition through a special use of the sidewalk (*id.* at 9). Second, plaintiff argues that LHH failed to make prima facie showing that the ramp was reasonably safe because Dolhon did not establish that placing a uniformly black ramp across the sidewalk is safe or reasonable, or that placing one with an elevated vertical lip is safe or reasonable (*id.* at 12). Dolhon's statement is conclusory as he did not provide any analysis as to the degree of difference between the homemade ramp compared to the Mighty Guard ramp required by the plans, the visibility of the ramp at night with or without supplemental lighting or warning signs, or the impact of an elevated vertical lip on pedestrian safety (*id.*)

Third, plaintiff argues that LHH has provided no evidence that the ramp was open and obvious to contradict plaintiff and her husband's account that the area was dark on the night of the

**150475/2022  ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL**                                    **Page 9 of 13**
**Motion No.  001 002**

9 of 13

[* 9]

accident, making the black ramp difficult to see (*id.* at 16). Furthermore, plaintiff's testimony of not recalling whether she noticed the fencing and oxygen trailer on the street at her deposition a year after the incident does not establish that she was not exercising ordinary prudence when walking on the sidewalk (*id.*). Moreover, exercise of reasonable care only goes to the issue of comparative negligence (*id.* at 17). Regarding LHH's argument that the cause of plaintiff's fall is unknown, plaintiff argues that her testimony identifying her foot making contact with the ramp cover, in addition to her husband's testimony identifying the same is sufficient (*id.* at 17-18). Additionally, photographs of the ramp show that it was not narrow and extended multiple feet along the length of the sidewalk (*id.* at 18). Plaintiff estimates that the ramp was 18 inches across and 3 inches wide, long enough for her to fall on (*id.*). Lastly, plaintiff contends that triable issues of fact remain as to whether the ramp was unreasonably dangerous (*id.* at 19).

In support, plaintiff submitted the affidavit of a professional engineer, Steven Schneider (NYSCEF Doc No. 97, Schneider Affidavit). Schneider stated that a ramp cover constitutes a tripping hazard because it extends several inches above the sidewalk, and the industry standard is to take certain safety precautions so that pedestrians can be expected to safely navigate (*id.* ¶ 10). He further stated the ramp was not ADA compliant or equal as required by the plan (*id.*). He further opines that the industry custom and practice requires applying high-visibility tape and reflectors or installing supplemental lighting and signs to warn pedestrians of the upcoming tripping hazard (*id.* ¶ 12). In his opinion, the installation of a uniformly black covered ramp, without safety measures to increase the visibility of the ramp, substantially contributed to plaintiff's trip and fall (*id.* ¶ 16).

In reply, LHH argues that plaintiff has not raised a triable issue of fact to rebut the prima facie showing that there was no dangerous or defective condition (NYSCEF Doc No. 102,

**150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL**       **Page 10 of 13**
**Motion No.  001 002**

[* 10]

10 of 13

Affirmation in Reply of Charles A. Franchini, Esq. [reply aff], 2). LLH contends that plaintiff in opposition admitted that the issue is whether the ramp was equivalent to the ELASCO ramp which was stated in the approved plan (*id.*). Dolhon attested that the ramp is functional equivalent to the ESLASCO ramp and constructed per the design specifications (*id.*). Plaintiff's expert only attempts to highlight cosmetic differences between the two, which is insufficient to create a triable issue of fact (*id.*). It further argues that plaintiff's expert only speculated that the edge of the ramp was not sloped enough, making it a tripping hazard, and failed to provide actual measurement of the edge (*id.* at 3). Additionally, the expert's statements that the wood ramp used is not ADA compliant is conclusory (*id.* at 5). Lastly, LHH argues that plaintiff failed to rebut the prima facie showing that the ramp was open and obvious as Dr. Bronner's affidavit proves that the ramp was visible to plaintiff (*id.*).

## Discussion

"[D]espite [Administrative Code] § 7-210, owners remain liable for injuries caused by defective sidewalks if they caused or created a dangerous condition thereon or derived a special use from the public sidewalk" (*Davidson v Shubert Org., Inc.*, 2023 NY Slip Op 30229(U)**6 [Sup Ct, NY County 2023], quoting *Meyer v City of New York*, 114 AD3d 734, 734-735 [2d Dept 2014]; *see also Mule v Invite Health at New Hyde Park, Inc.*, 180 AD3d 693, 694 [2d Dept 2020] ["An abutting owner or lessee will be liable to a pedestrian injured by a dangerous condition on a public sidewalk only when the owner or lessee created the condition to occur because of a special use . . ."]. A special use has been characterized as involving "[t]he installation of some object in the sidewalk or street or some variance in the construction thereof" (*Granville v City of New York*, 211 AD2d 195, 197 [1st Dept 1995]). Here, the record demonstrates that the plywood ramp belonged to LHH and was installed on the sidewalk at its behest (*see* NYSCEF Doc No. 73, tr 85-

**150475/2022  ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL**  **Page 11 of 13**
**Motion No.  001 002**

11 of 13

86). Therefore, LHH, as a special user of the public sidewalk is duty-bound to maintain the special use area of the sidewalk in a reasonably safe condition (*see Robles v Time Warner Cable Inc.*, 167 AD3d 411, 411 [1st Dept 2018]).

"An owner or tenant in possession of realty owes a duty to maintain the property in a reasonably safe condition . . . and must warn of any dangerous or defective condition of which it has actual or constructive notice" (*Fishelson v Kramer Props., LLC*, 133 AD3d 706, 707 [2d Dept 2015]). "However, there is no duty to protect or warn against an open and obvious condition that, as a matter of law, is not inherently dangerous" (*Torres v LaBorinquena HDFC, Inc.*, 229 AD3d 830, 831 [2d Dept 2024] [citations omitted]). An open and obvious hazardous condition is one which would be apparent to any observer reasonably using his or her senses (*see Tagle v Jakob*, 97 NY2d 165 at 170 [2001]).

Here, the Court finds that LHH failed to establish its prima facie entitlement to summary judgment, as it has not established that the condition of the ramp was open and obvious. Plaintiff testified that it was dark when she was traversing the sidewalk, the ramp was dark, and there were no yellow or fluorescent markings on the ramp (*see* NYSCEF 69, tr at 37, 39, 82). Additionally, plaintiff's husband also testified it was dark and his wife's foot hit the "black portion of the ramp" (*see* NYSCEF Doc No. 74, tr at 39, 47). Given the location of the ramp, the black color of the ramp, and the time of the incident, it cannot be said that, as a matter of law, the condition was one that could not have been overlooked by an observer reasonably using her senses. "While the issue of whether a hazard is latent or open and obvious is generally fact-specific and thus usually a jury question, a court may determine that a risk was open and obvious as a matter of law when the established facts compel that conclusion and may do so on the basis of clear and undisputed evidence" (*Tagle*, 97 NY2d 165 at 169 [internal quotation marks and citations omitted]; *see also*

**150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL**          **Page 12 of 13**
**Motion No.  001 002**

12 of 13

[* 12]

*Butler v NYU Winthrop Hosp.*, 225 AD3d 658, 659 [2d Dept 2024] ["The question of whether a condition is open and obvious is usually a question of fact properly resolved by a jury"] [citation omitted]).

Lastly, LHH is not entitled to summary judgment because plaintiff consistently testified that she tripped when her foot made contact on the ramp which was placed on the sidewalk and she identified the general location of the incident (*see Martinez v City of New York*, 190 AD3d 561, 561 [1st Dept 2021] [denial of summary judgment to defendant affirmed where plaintiff identified cause and general location of the alleged incident]).

Since defendant did not meet its prima facie burden of proof, its motion for summary judgment dismissing the complaint is denied without the need to consider the adequacy of plaintiff's opposition (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985] [citations omitted]).

### Conclusion

Accordingly, it is

ORDERED that defendant Central Consulting & Contracting, Inc.'s motion for summary judgment pursuant to CPLR 3212 is granted and plaintiff's complaint and defendant Lenox Hill Hospital's cross claims are dismissed; and it is further

ORDERED that defendant Lenox Hill Hospital's motion for summary judgment pursuant to CPLR 3212 is denied it in its entirety.

| **10/9/2024** | | | | |
|---|---|---|---|---|
| **DATE** | | | **RICHARD G. LATIN, J.S.C.** | |
| **CHECK ONE:** | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| **APPLICATION:** | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

150475/2022   ANNE BRONNER vs. CENTRAL CONSULTING & CONTRACTING, INC. ET AL          Page 13 of 13
Motion No.  001 002

13 of 13